UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONA MARINO on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CACAFE, INC., JANE ZHENG, TED CHAO, COSTCO WHOLESALE CORPORATION, CLUB DEMONSTRATION SERVICES, INC., and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No. 4:16-cv-06291-YGR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND COSTS<br><br>Dkt. Nos. 166, 169 |

On April 23, 2019 at 2:00 p.m. in the United States District Court for the Northern District of California, the Honorable Yvonne Gonzalez Rogers presiding, this action came on for hearing on Plaintiff's Motion for Final Approval of Class Action Settlement, and plaintiff's Motion for Attorneys' Fees and Costs.

The Court having considered the papers and oral argument submitted in support of the motions and the parties' class action settlement, hereby **ORDERS** that the motions are **GRANTED**.

The Court determines as follows:

1.      Pursuant to the Preliminary Approval Order and the terms of the Class Action Settlement Agreement and Stipulation (the "Settlement Agreement," **Exhibit A** hereto), the class notice (**Exhibit B** hereto) was mailed to class members via first class mail.  Class members were also sent notice by email and text message at their last available contacts provided, and skip traces were performed for returned correspondence.  The Court finds and determines that this notice procedure afforded adequate protections

to class members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of class members. The Court finds and determines that the notice provided in this case was the best notice practicable, which satisfied the requirements of law and due process.

2.      The class as conditionally certified by the Preliminary Approval Order meets all of the legal requirements for class certification for settlement purposes under Federal Rule of Civil Procedure 23 and the class is appropriate for final certification for settlement purposes.

3.      Considering strength of the case and the risks of further litigation, the Court views the $640,000.00 settlement result as very favorable for the class.

4.      Only one class member, Gayle Bradshaw, excluded herself from the settlement.

5.      The 111 remaining class members each will be awarded $63 per shift, more than some earned working for CACafe. Class members are achieving an average net recovery of nearly $2,000 each, which is significant for the low-wage workers in the case, and – according to Plaintiff's counsel's estimations – amounts to more than 60% of the best-day potential recovery, before penalties.

6.      The settlement was negotiated at arm's length, after extensive, contentious litigation, with multiple contested motions decided, numerous depositions and voluminous document exchanges, and after two mediations and months of bilateral negotiations.

7.      Experienced class counsel, Bryan Schwartz Law, have worked ably and actively to vindicate the class members' interests.

8.      The parties exhausted required governmental reporting, under the federal Class Action Fairness Act (CAFA), and the California Labor Code Private Attorneys General Act (PAGA), §2698, *et seq.* The government declined to intervene. The Court finds that the $4,800 (1%) PAGA allocation is fair, since PAGA ultimately was not a driver of the settlement amount and since the overall settlement provides meaningful relief to the class members.

9.      The Court finds reasonable the service payments requested for plaintiff Leona Marino ($15,000), class member deponents Ralph Tracy and William Harris ($2,500 each), and opt-ins and class member declarants (listed on **Exhibit C** hereto) ($1,000 each). Marino stepped forward to file this suit,

risked notoriety in doing so, and dedicated substantial efforts to benefiting the class, including responding to extensive discovery and a lengthy deposition over two days. She executed a broader release than the other class members, also warranting additional consideration. The deponents, opt-ins, and declarants all furthered the litigation, benefiting the class and helping lead to this favorable outcome.

10. Plaintiff's request for $320,000 in attorneys' fees and $55,000 in costs is reasonable. The Court has reviewed counsel's declaration and exhibits and finds the amounts are well-supported, and below counsel's reasonable lodestar in this matter.

11. The amount of $9,000.00 requested to be paid to the Settlement Administrator is reasonable and fairly supported.

The Court therefore **ORDERS** that the settlement is **APPROVED** and the foregoing amounts shall be paid from the settlement fund.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this order and the Settlement.

Upon completion of administration of the Settlement, the Settlement Administrator will provide written certification of such completion to the Court and counsel for the parties.

This document shall constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**


Dated: _____April 26_____, 2019


_____
HON. YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT

# EXHIBIT A

Bryan Schwartz (SBN 209903)
bryan@bryanschwartzlaw.com
Eduard Meleshinsky (SBN 300547)
eduard@bryanschwartzlaw.com
BRYAN SCHWARTZ LAW
1330 Broadway, Suite 1630
Oakland, California 94612
Tel: (510) 444-9300
Fax: (510) 444-9301

Attorneys for Plaintiff LEONA MARINO
Individually and all others similarly situated

*(Additional counsel listed on following page)*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONA MARINO, on behalf of herself and all other similarly situated,<br><br>            Plaintiff,<br><br>   vs.<br><br>CACAFE, INC., JANE ZHENG, TED CHAO, COSTCO WHOLESALE CORPORATION, CLUB DEMONSTRATION SERVICES, INC., and DOES 1 through 10 inclusive,<br><br>           Defendants. | Case No. 4:16-cv-06291-YGR<br><br>ASSIGNED TO THE HON. YVONNE GONZALEZ ROGERS<br><br>**CLASS ACTION SETTLEMENT AGREEMENT AND STIPULATION**<br><br><br>Complaint Filed:  October 31, 2016<br>First Amended Complaint Filed:  January 9, 2017 |

Sam X.J. Wu (SBN 183098)
samwulaw@yahoo.com
Alexei Brenot (SBN 194693)
samwulaw@yahoo.com
LAW OFFICES OF SAM X.J. WU, APC
8600 Utica Avenue, Building 100
Rancho Cucamonga, California 91730
Tel.: (415) 985-7300
Fax: (415) 985-7301

Attorneys for Defendants CACAFE, INC.,
JANE ZHENG, and TED CHAO

Catherine M. Dacre (State Bar No. 141988)
cdacre@seyfarth.com
Justin Taylor Curley (State Bar No. 233287)
jcurley@seyfarth.com
Seyfarth Shaw LLP
560 Mission Street, Suite 3100
San Francisco, CA 94105
Tel.:  (415) 397-2823
Fax:  (415) 397-8549

David D. Kadue (State Bar No. 113578)
dkadue@seyfarth.com
Seyfarth Shaw LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
Tel:  (310) 201-5211
Fax: (310) 201-5219

Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

Fermin H. Llaguno (State Bar No. 185222)
fllaguno@littler.com
Oliver B. Dreger (State Bar No. 261351)
odreger@littler.com
Littler Mendelson, P.C.
2050 Main Street, Suite 900
Irvine, CA 92614
Tel:  (949) 705-3000
Fax: (949) 724-1201

Attorneys for Defendant
CLUB DEMONSTRATION SERVICES, INC.

**CLASS ACTION SETTLEMENT AGREEMENT AND STIPULATION**

This Class Action Settlement Agreement and Stipulation is entered into between Plaintiff LEONA MARINO, as an individual and on behalf of the Settlement Class (as defined below) on the one hand, and Defendants CACAFE, INC. ("CACafe"), JANE ZHENG ("Zheng"), TED CHAO ("Chao"), COSTCO WHOLESALE CORPORATION ("Costco"), and CLUB DEMONSTRATION SERVICES, INC. ("CDS"), on the other hand, in the matter entitled *Leona Marino, et al. v. CACafe, Inc., et al.*, pending in the U.S. District Court for the Northern District of California, Case No. 4:16-cv-06291-YGR.

## **DEFINITIONS**

1.     Action.  The "Action" means the class action claims filed in the U.S. District Court for the Northern District of California, entitled LEONA MARINO, *on behalf of herself and all others similarly situated, v. CACafe, Inc., et al.,* Case No. 4:16-cv-06291-YGR.

2.     Agreement.  "Agreement" shall refer to the instant Class Action Settlement Agreement and Stipulation.

3.     The Class.  "The Class" means all 112 Class Members.

4.     Class Counsel.  "Class Counsel" means Bryan Schwartz and Eduard Meleshinsky of Bryan Schwartz Law or any successor(s) thereof.

5.     Class Members and Settlement Class Members.  "Class Members" means all 112 in-store demonstrators who Plaintiff Leona Marino alleges and claims in the Action to have been jointly employed by Defendants from October 31, 2012 through the Preliminary Approval Date.   "Settlement Class Members" means all Class Members other than those who opt out (see ¶¶ 24, 58).

6.     Class Notice.  "Class Notice" means the document mutually agreed upon by the Parties and approved by the Court to be sent to the Class following preliminary approval that notifies Class Members of the Settlement which explains the Settlement and Class Members' options.

7.     Class Period.  "Class Period" means the period of time beginning on October 31, 2012 and ending on the Preliminary Approval Date.

8.     The Court.  The "Court" refers to the U.S. District Court for the Northern District of California.

9.     <u>Defendants and Paying Defendants</u>. "Defendants" means Defendants CACAFE, INC. ("CACafe"), JANE ZHENG ("Zheng"), TED CHAO ("Chao"), COSTCO WHOLESALE CORPORATION ("Costco"), and CLUB DEMONSTRATION SERVICES, INC. ("CDS"). "Paying Defendants" shall mean CACafe, Zheng, Chao and CDS.

10.     <u>Effective Date</u>. "Effective Date" of this Agreement means the following date that is applicable to the status of the case: (a) if no objections to the Settlement are submitted, or objections to the Settlement are submitted but subsequently withdrawn prior to the Final Approval Date, the Effective Date is the Final Approval Date (as defined below); (b) if one or more objections are submitted which are not subsequently withdrawn prior to the Final Approval Date, the Effective Date is fifteen (15) court days after the expiration of any appeals period, provided that no appeal is filed; (c) if one or more objections are submitted which are not subsequently withdrawn prior to the Final Approval Date, and in the event an appeal or appeals are filed, the Effective Date is fifteen (15) court days after: (i) the date the Final Judgment is affirmed by an appellate court with no possibility of subsequent appeal or other judicial review therefrom; or (ii) the date the appeal(s) or other judicial review therefrom are dismissed with no possibility of subsequent appeal or other judicial review; or (iii) if remanded to the Court, the date the Final Judgment is entered by the Court after remand and the time to appeal or seek permission to appeal or seek other judicial review of the entry of that Final Judgment has expired with no further appeal or other judicial review having been taken or sought. If further appeal is sought after remand, the time periods in this subsection shall apply.

11.     <u>Exclusion Period</u>. The "Exclusion Period" means the time period commencing on the date the Class Notice is mailed to Class Members and ending forty-five (45) calendar days later, on the deadline to submit an Opt Out Request or Objection. In the event the forty-fifth (45th) day is a holiday, Saturday or Sunday, the Exclusion Period shall close/end on the next business day.

12.     <u>Final Approval Date</u>. "Final Approval Date" means the date on which the Court enters Final Judgment in this matter approving the fairness, reasonableness, and adequacy of the terms and conditions of the Settlement, entering the final approval order and Final Judgment, and awarding and ordering the payment of all required amounts pursuant to the terms of this Agreement (approved Class Counsel's attorneys' fees and costs, Settlement Payments to Class Members, etc.).

13.    Final Approval Hearing Date.  "Final Approval Hearing Date" means the date on which the Final Settlement Approval Hearing is held.

14.    Final Judgment.  "Final Judgment" means the Judgment entered and filed by the Court that: (1) finally approves this Agreement and the Settlement and disposes of all issues raised in this Action, bars Settlement Class Members from reasserting Settled Claims against Released Parties and permanently enjoins all Class Members who have not timely opted out from this Settlement from pursuing, or seeking to reopen, any of the Settled Claims; and (2) awards and orders the payment of all required and undisputed amounts pursuant to the terms of this Agreement (approved Class Counsel's attorneys' fees and costs, Settlement Payments to Class Members, etc.). In the event of an appeal of a reduction of attorneys' fees and costs, Final Judgment shall take place after the resolution of such an appeal.

15.    Final Settlement Approval Hearing.  "Final Settlement Approval Hearing" means the hearing on the Final Approval Hearing Date at which the Court shall consider the motion for final approval of this Settlement and determine whether to fully and finally approve the fairness and reasonableness of this Settlement and Agreement, and enter an order barring Settlement Class Members from asserting Settled Claims against Released Parties and permanently enjoining all Settlement Class Members who have not timely opted out from this Settlement from pursuing, or seeking to reopen, any of the Settled Claims.

16.    Gross Settlement Amount or GSA.  "Gross Settlement Amount" or "GSA" means a maximum total payment of Six Hundred Forty Thousand Dollars and Zero Cents ($640,000.00), payable by the Defendants under this Agreement, with said amount being apportioned among the Paying Defendants as follows:  CACafe, Zheng and Chao paying a total amount of $530,000; and CDS paying a total amount of $110,000.  Defendants shall not be obligated to pay more than the GSA under this Agreement under any circumstances, except that any employer-side payroll taxes related to the Settlement Payment(s) paid to the Settlement Class, if any were to be assessed, shall remain Defendant CACafe's sole and separate responsibility and shall not be paid out of the GSA.  Other than the employer-side payroll taxes, in no event shall Defendants be required to pay any amounts above the GSA under this Settlement and this Agreement.  No portion of the GSA shall revert to Defendants.  In no event will

Defendant CDS be required to pay more than $110,000 under this Settlement and this Agreement. In no event will Defendant Costco be required to pay anything under this Settlement and this Agreement.

17. <u>LWDA</u>. "LWDA" means the California Labor & Workforce Development Agency.

18. <u>Last Known Address</u>. "Last Known Address" means the most recently recorded mailing address for a Class Member contained in Defendant CACafe's payroll records.

19. <u>Named Plaintiff</u>. "Named Plaintiff" means Leona Marino.

20. <u>Net Settlement Amount or "NSA"</u>. "Net Settlement Amount" or "NSA" means the Gross Settlement Amount less the amounts deducted pursuant to Paragraph 51.a through 51.f of this Agreement, including deductions of the amounts awarded to Class Counsel, the enhancement awards to the Named Plaintiff, as well as other opt-in Plaintiffs and putative class member declarants, the payment to the LWDA to resolve claims under the PAGA, and the costs awarded for settlement administration owed pursuant to this Agreement.

21. <u>Notice Plan</u>. "Notice Plan" shall mean the plan for the provision of notice to all Class Members under this Agreement in Paragraphs 55 to 59.

22. <u>Notice Mailing Deadline</u>. "Notice Mailing Deadline" means the date fifteen (15) calendar days after the Preliminary Approval Date, as set forth in Paragraph 56.b.

23. <u>Objection</u>. "Objection" means a written request a Class Member may submit no later than the last day of the Exclusion Period and in the form specified in Paragraph 59 in order to object to the Settlement.

24. <u>Opt Out Request</u>. "Opt Out Request" means the written request drafted jointly by the Parties and approved by the Court (see Paragraph 58 hereof) and submitted no later than the last day of the Exclusion Period to request exclusion from the Settlement.

25. <u>Order of Final Approval or Order Granting Final Approval of Settlement</u>. "Order of Final Approval" or "Order Granting Final Approval of Settlement" means a proposed order issued in conjunction with the entry of the Final Judgment to be submitted by the Named Plaintiff together with the Motion for Final Approval of the Settlement for entry and filing by the Court as specified in this Settlement.

**CLASS ACTION SETTLEMENT AGREEMENT AND STIPULATION**

26. <u>Parties</u>. "Parties" shall mean Named Plaintiff, individually and on behalf of all Class Members, and Defendants.

27. <u>Preliminary Approval Date</u>. "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

28. <u>Preliminary Approval Order</u>. "Preliminary Approval Order" is the order entered and filed by the Court that preliminarily approves the terms and conditions of this Agreement, including approval of the Parties' Agreement that specifies the content of notice and manner in which notice will be provided to the Class and responded to by the Class.

29. <u>Released Parties</u>. "Released Parties" means Defendants, and their past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, owners, partners, joint venturers, affiliated organizations, related companies and business concerns, shareholders, members, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, benefits plans sponsored or administered by Defendants, divisions, units, and branches, and any other persons or entities acting on behalf of or in concert or connected with any of the foregoing.

30. <u>Settlement</u>. "Settlement" shall refer to the agreement of the Parties to settle the claims as set forth and embodied in this Agreement.

31. <u>Settlement Administrator</u>. "Settlement Administrator" or "SA" shall mean Rust Consulting, Inc. ("Rust") or such other neutral administrator as chosen by the Parties and approved by the Court (see Paragraph 55.a).

32. <u>Settled Claims</u>. "Settled Claims" means any and all claims contained in the operative First Amended Complaint filed in the Action on January 9, 2017 ("Complaint"), and any additional wage and hour claims that could have been brought by the Named Plaintiff and the Class Members based on the facts alleged in said Complaint, for the time period of October 31, 2012 through the Preliminary Settlement Approval Date. "Settled Claims" includes any and all claims for relief, whether suspected or unsuspected, which settlement class members have had, now have, or may discover in the future against the Released Parties or any of them for any or all claims alleged in the Complaint or which could have been alleged in the Complaint based on the allegations, facts, matters, transactions or occurrences alleged

therein, and shall specifically include without limiting the generality thereof: claims for missed and/or unpaid meal periods and/or rest periods; failure to reimburse business expenses; failure to pay all wages owed (including without limitation, regular wages, the regular rate of pay, minimum wage, overtime pay, double time pay, premium pay or otherwise properly calculate overtime or the regular rate of pay, failure to pay employees for all hours worked, and/or off-the-clock claims); failure to properly pay all wages upon termination; any claim for failure to keep and/or maintain accurate records; unlawful deductions; failure to timely pay wages owed; claims for failure to provide accurate, itemized wage statements; waiting time penalties; and claims for PAGA penalties and/or unfair competition claims based on the foregoing. The Release of the foregoing claims extends to all theories of relief regardless of whether the claim is, was, or could have been alleged as separate claims, causes of action, lawsuits or based on other theories of relief, whether under California law, federal law, state law or common law (including, without limitation, as violations of the California Labor Code, the California Wage Orders, applicable regulations, California's Business and Professions Code section 17200 or under California's Private Attorneys General Act, and the Fair Labor Standards Act). "Settled Claims" includes all types of relief available for the above-referenced claims, including, without limitation, any claims for damages, restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages. "Settled Claims" also includes an express waiver of all benefits under section 1542 of the California Civil Code as to the Settled Claims only, as well as under any other federal or state statutes or common law principles of similar effect. Section 1542 provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Final Judgment shall expressly provide that it covers and bars each and every Settlement Class Member from asserting any Settled Claims in the future.

33. <u>Settlement Class/Settlement Class Member(s)</u>. "Settlement Class Member" means all Class Members other than those who have timely and validly submitted Opt Out Requests and thereby excluded themselves from the Settlement.

34. <u>Settlement Formula</u>. "Settlement Formula" means the method agreed upon by the Parties to calculate Settlement Payments (see Paragraph 51.)

35. <u>Settlement Payment</u>. "Settlement Payment" means a payment pursuant to a Settlement Class Member's *pro rata* allocation of the NSA as specified in Paragraph 51.

36. <u>Settlement Proceeds Distribution Deadline</u>. "Settlement Proceeds Distribution Deadline" means a date that is ten (10) calendar days after the Effective Date. In the event Class Counsel appeals a reduction of their requested fees and/or costs, the Settlement Proceeds Distribution Deadline remains unmodified as to the amounts provided by this Agreement and approved by the Court. The remaining funds shall be distributed pursuant to the terms of Paragraph 51(b) regarding a possible appeal of a reduction of Class Counsel's award of fees and/or costs.

37. <u>Shift Rate</u>. "Shift Rate" shall mean the amount yielded from dividing the Net Settlement Amount by the total of all Shifts Worked credited to all Settlement Class Members. Each Settlement Class Member's Settlement Payment is equal to the Shift Rate multiplied by his or her individual Shifts Worked. Therefore, the amount of each Settlement Class Member's Settlement Payment is tied to the number of Shifts Worked that each Settlement Class Member worked in comparison to all Shifts Worked by all Class Members during the Class Period.

38. <u>Shifts Worked</u>. "Shifts Worked" means the number of full or partial compensable shifts the Settlement Class Member worked as an in-store demonstrator during the Class Period, as determined by Defendant CACafe's records and as only subject to revision pursuant to the challenge provisions set forth in Paragraph 57.c.

39. The Named Plaintiff and each Settlement Class Member may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Settled Claims, but the Named Plaintiff and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all Settled Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a

breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts relating to the claims as alleged in the Action. The Named Plaintiff acknowledges, and shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

40. <u>Updated Address</u>. "Updated Address" means a mailing address that was updated by a reasonable address verification measure of the SA or by an updated mailing address provided by the United States Postal Service or a Class Member.

## **RECITALS**

41. On or about October 31, 2016, the Action was filed against Defendants.

42. Under the operative First Amended Complaint filed in the Action on January 9, 2017, Named Plaintiff alleges ten (10) causes of action, including (1) Failure to Pay Minimum Wage Compensation for All Time Worked in Violation of FLSA, 29 U.S.C. § 206; (2) Failure to Pay Overtime Wages for All Time Worked in Violation of FLSA, 29 U.S.C. § 207; (3) Failure to Pay Minimum Wage Compensation, in Violation of Cal. Labor Code §§ 1194, 1197, 1197.1, and Industrial Welfare Commission Wage Orders; (4) Failure to Pay Overtime Wages for Daily Overtime and All Time Worked, in Violation of California Labor Code §§ 510, 1194, and 1198, and IWC Wage Orders; (5) Failure to Reimburse Business Expenses in Violation of California Labor Code § 2802; (6) Failure to Provide and/or Authorize Meal and Rest Periods or Pay Meal or Rest Period Premium Wages in Violation of Cal. Labor Code §§ 558, 512, 226.7, and IWC Wage Orders; (7) Failure to Provide Itemized Wage Statements in Violation of Cal. Labor Code §§ 226, 226.3, 1174 and IWC Wage Orders; (8) Failure to Pay Earned Wages Upon Discharge and Waiting Time Penalties in violation of Labor Code §§ 201-203; (9) Violation of Cal. Business and Professions Code § 17200, *et seq.*; and (10) Civil Penalties Pursuant to the PAGA, Cal. Labor Code § 2698, *et seq.*

43. Defendants filed Answers that denied the claims as being without merit and asserted various affirmative defenses. Defendants denied and continue to deny that they engaged in any misconduct in connection with their retention of the Class Members, the classification of the Class Members, their wage and hour practices and that they have any liability or have engaged in wrongdoing of any kind associated with the claims alleged in the Action, including any Settled Claims. Defendants

further contend that they have complied at all times with both federal and state classification and wage and hour laws, and all other laws regulating the hiring relationship that relate to the hiring of Named Plaintiff and the Class. Defendants further contend that at no time did they employ or jointly employ the Class Members.

44.     Defendants and Class Counsel, on behalf of the Named Plaintiff and the Class, attended a full-day mediation with Jeffrey A. Ross, Esq. on March 28, 2018. The Parties did not reach a settlement at mediation but engaged in further settlement discussions with Mr. Ross' assistance following mediation. Ultimately, the Parties reached a settlement through the mediator. The Parties embodied the agreement in a Memorandum of Understanding. The Parties hereto agree that the terms and conditions of this Agreement are the result of lengthy, intensive arms-length negotiations between the Parties supervised by an experienced employment law mediator. The Parties agree that the Agreement is entered into in good faith as to each Class Member.

45.     Class Counsel is of the opinion that this Settlement is fair, reasonable, and adequate, and in the best interest of the Class in light of all known facts and circumstances, including the benefits conferred by the Settlement, the risk of significant delay, the uncertainty and risk of the outcome of further litigation, the burdens of proof necessary to establish liability, defenses asserted to the merits, the risks of proceeding on any class claims, including class certification, the difficulties in establishing damages, and the numerous potential appellate issues, as well as the limited financial ability of CACafe to satisfy and pay any monetary award entered in favor of the Class. Based on the foregoing, Named Plaintiff and Class Counsel have determined that the Settlement set forth in this Agreement is a fair, adequate, and reasonable settlement, and is in the best interests of the Settlement Class Members. While Defendants specifically deny any liability or wrongdoing in the Action, Defendants have agreed to enter into this Settlement to avoid the cost and business disruption associated with defending the Action. Defendants have claimed and continue to claim that the Settled Claims have no merit and do not give rise to liability. This Agreement is a compromise of disputed claims. This Agreement, made and entered into by and between the Named Plaintiff (on behalf of herself and on behalf of the Class Members) and Defendants, each with the assistance of their respective counsel or attorneys of record, is intended to fully, finally, and forever settle, compromise and discharge the Settled Claims against the Released

Parties, subject to the terms and conditions set forth herein. This Agreement supersedes all prior agreements of the Parties concerning settlement of the Action, including the Memorandum of Understanding signed by the Parties.

46. Because this Action is pled as a class action, this Settlement must receive preliminary and final approval by the Court. Accordingly, the Parties enter into this Agreement on a conditional basis.

47. This Agreement is a settlement document and shall not be disclosed in any manner unless and until it is filed as a public record document with the Court, and neither its acceptance by the Parties nor its filing with the Court shall, in themselves, render this Agreement admissible in evidence in any other proceeding, subject to the limited exception that it shall be admissible in an action or proceeding to approve, interpret or enforce this Agreement.

## TERMS AND CONDITIONS OF SETTLEMENT

NOW THEREFORE, in consideration of the recitals listed above and the promises and warranties set forth below, and intending to be legally bound and acknowledging the sufficiency of the consideration and undertakings set forth herein, the Named Plaintiff, individually and on behalf of the Class Members, on the one hand, and Defendants, on the other hand, agree that the Action shall be, and is finally and fully compromised and settled on the following terms and conditions.

48. Non-Admission of Liability. The Parties enter into this Agreement to resolve the disputes that have arisen between them and to avoid the burden, expense and risk of continued litigation. In entering into this Agreement, Defendants do not admit, and specifically deny, that they have: violated any federal, state, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations or legal requirements; breached any contract; violated or breached any duty; engaged in any misrepresentation or deception; or engaged in any other unlawful conduct with respect to their employees or any other person or entity. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it or proceedings, payouts or other events associated with it, shall be construed as an admission or concession by Defendants of any such violation(s) or failure(s) to comply with any applicable law by Defendants or any Released Parties. Except as necessary in a proceeding to approve, interpret or enforce the terms of this Agreement, this

Agreement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of Defendants or to establish the existence of any condition constituting a violation of, or noncompliance with, federal, state, local or other applicable law. In addition, as set forth in paragraph 70, the Parties intend this Settlement to be contingent upon the preliminary and final approval of this Agreement; and in the event final approval of this Agreement is not obtained the Parties do not waive, and instead expressly reserve, their respective rights to prosecute and defend this Action as if this Agreement never existed in the event the Settlement is not fully and finally approved as set forth herein. In the event that this Agreement is not approved by the Court, fails to become effective, or is reversed, withdrawn or modified by the Court or any other court with jurisdiction over the Action, the Agreement shall become null and void *ab initio* and shall have no bearing on, and shall not be admissible in connection with, further proceedings in the Action.

49. <u>Stipulation for Class Certification</u>. The Parties stipulate to the certification of the Settlement Class for purposes of this Settlement only. If, however, the Settlement does not become final for any reason, the Parties' Agreement shall become null and void *ab initio* and shall have no bearing on, and shall not be admissible in connection with, whether class certification would be appropriate in any other context in the Action.

50. As of the Effective Date, Named Plaintiff and all Settlement Class Members hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all Settled Claims. The Settlement includes a release of all Settled Claims by Settlement Class Members. As of the entry and filing of the Final Judgment, Named Plaintiff, and the Settlement Class Members, and all successors in interest, shall be permanently enjoined and forever barred from prosecuting any and all Settled Claims released pursuant to this Agreement against the Released Parties.

a. The Parties agree for settlement purposes only that, because the Class Members are so numerous, it is impossible or impracticable to have each Class Member execute this Agreement. Accordingly, the Class Notice advises all Class Members of the binding nature of the release and such notice shall have the same force and effect as if the Agreement were executed by each Class Member.

b.     Named Plaintiff and Class Counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged, except as set forth herein.

51.     <u>Settlement Payments and Calculation of Claims</u>.  Subject to final Court approval and the conditions specified in this Agreement, and in consideration of the mutual covenants and promises set forth herein, the GSA shall fully satisfy Defendants' obligations for any and all payments, fees and costs identified in the Agreement, including, but not limited to, any payments to be made to the Named Plaintiff, Settlement Class Members, the LWDA, Class Counsel's attorneys' fees and out-of-pocket litigation expenses and costs, and settlement administration costs.  In no event shall Defendants be required to pay any amounts above the GSA under this Settlement and this Agreement, except that any employer-side payroll taxes, if any were to be assessed, for the Settlement Payment(s) paid to the Settlement Class shall remain Defendant CACafe's sole and separate responsibility and shall not be paid out of the GSA.  The Parties agree, subject to Court approval, that the GSA shall be apportioned as follows:

a.     <u>Attorneys' Fees</u>.  Class Counsel will apply to the Court for an award of attorneys' fees of no more than Three Hundred Twenty Thousand Dollars and No Cents ($320,000.00), which equals one-half of the GSA.  The attorneys' fees shall come from and be deducted from the GSA and paid out as set forth herein.  Defendants will not oppose such application.

b.     <u>Attorneys' Costs</u>.  Named Plaintiff and Class Counsel shall request approval of payment of up to but not to exceed $55,000 in attorneys' costs, which will be deducted from the GSA and paid out as set forth herein.  Actual costs will be paid out of the Gross Settlement Amount, separate from the fees requested, and separate from settlement administrator costs, which will also be paid from the GSA. Defendants will not oppose such application.  Attorneys' fees as specified in the preceding paragraph and costs as specified in this paragraph shall cover all claimed and unclaimed attorneys' fees, attorneys' costs and other amounts payable or awardable against Defendants for Class Counsel's work, effort or involvement in the Action and in carrying out the Agreement and includes any and all work, effort or involvement to carry out the terms of the Agreement and as may be necessary or advisable to

defend the Agreement and/or Settlement through appeal, or collateral attack or in any other forum or proceeding.

The Parties expressly agree that the Court's approval or denial of any request for attorneys' fees and costs are not material conditions to this Agreement, and are to be considered by the Court separately from the fairness, reasonableness, adequacy, and good faith of the Parties' settlement. Any order or proceeding relating to the application by Class Counsel of an award for fees and costs shall not operate to terminate or cancel this Agreement. Notwithstanding any other provision of this Agreement, to the extent the Court awards less than the amount of attorneys' fees and costs requested by Class Counsel, the Parties agree that Class Counsel may appeal the Court's reduction in fees and costs requested by Class Counsel. In the event Class Counsel appeals a reduction of Class Counsel's requested fees and costs, the settlement shall proceed as otherwise provided for under this Agreement, except that the differential between the fees and costs award sought by Class Counsel and the amount awarded by the Court (the "Reduced Amount") shall remain in a qualified settlement fund until resolution of Class Counsel's appeal. If Class Counsel appeals a reduction in the attorneys' fees and costs award sought and is awarded the full Reduced Amount, then the funds remaining in the qualified settlement fund shall be distributed to Class Counsel at the earliest opportunity without delay. If Class Counsel's appeal is not fully successful, then the remaining amount – less any additional fees or costs awarded by an appellate court resulting from Class Counsel's appeal – will be distributed amongst Settlement Class Members on a *pro rata* basis by the Settlement Administrator if the remaining amount is greater than or equal to $10,000. If the remaining amount is less than $10,000, then the funds will be delivered to a mutually-agreed upon *cy pres* recipient. Defendants shall not be required to contribute any additional funds to the GSA on account of any appeal by Class Counsel regarding a reduction in the award of the fees and costs sought by Class Counsel, including but not limited to contributing any additional settlement administration costs.

c. <u>Administration Fees and Costs</u>. Class Counsel will also apply to the Court for approval of Settlement Administration costs currently estimated to be in an amount of up to Nine Thousand Dollars and No Cents ($9,000.00), which will be deducted from the GSA. Defendants will

not oppose such application.  Class Counsel will specify the amount sought for such costs, up to the foregoing maximum, in Named Plaintiff's motions for preliminary and final approval of the Settlement.

d. <u>Named Plaintiff and Active Participant Enhancements</u>.  Class Counsel will apply to the Court for approval of an enhancement award in an amount not to exceed Fifteen Thousand Dollars and Zero Cents ($15,000.00) to be paid to Named Plaintiff, for assuming the risks associated with this litigation and for providing a full, general release for any and all of Named Plaintiff's individual claims, known and unknown, against Defendants and Released Parties (including a 1542 waiver under Code of Civil Procedure section 1542, which provides, "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.").  Defendants will not oppose such application.  The enhancement award is included in, and shall be deducted from, the GSA.

Class Counsel will also apply to the Court for approval of enhancements to the opt-in Plaintiffs participating in depositions (other than Marino) of $2,500/each, and to the other opt-in Plaintiffs and declarants of $1,000/each, to compensate for their efforts contributing to this litigation.

The Parties expressly agree that the Court's approval or denial of any request for an enhancement is not a material condition to this Agreement, and is to be considered by the Court separately from the fairness, reasonableness, adequacy, and good faith of the Settlement. Any order or proceeding relating to the application by Class Counsel of an enhancement shall not operate to terminate or cancel this Agreement. To the extent the Court awards less than the amount of the requested enhancement amounts, the remaining amount will be redistributed amongst Settlement Class Members on a *pro rata* basis.

e. <u>Payment to the LWDA</u>.  Pursuant to California Labor Code Section 2698, *et seq.*, the Parties designate Six Thousand Four Hundred Dollars and Zero Cents ($6,400.00) of the GSA as payment for Named Plaintiff's claims on her own behalf and on behalf of all Class Members for penalties under the PAGA.  Seventy five percent (75%) of that amount, or Four Thousand Eight Hundred Dollars and Zero Cents ($4,800.00), shall be paid to the LWDA.  The remainder, or One Thousand Six Hundred Dollars and Zero Cents ($1,600.00) shall be paid to Settlement Class Members as part of the NSA.  Named Plaintiff represents that she has properly exhausted the necessary administrative remedies for

these claims. Defendants shall have the option of voiding this Agreement and Settlement in the event the LWDA refuses to accept the above amount in full for all civil penalties to aggrieved employees in connection with the civil penalty claims alleged in this Action, or in the event the LWDA or anyone on its behalf otherwise challenges the above allocation or the Settlement.

f. <u>Employer Payroll Taxes</u>. Any employer's share of payroll taxes due as a result of Settlement Payments to Settlement Class Members, if any were to be assessed, shall not be paid from the GSA and shall be Defendant CACafe's sole and separate responsibility.

g. <u>NSA</u>. The NSA will be the amount remaining after deducting the amounts specified in Paragraphs 51.a to 51.e (except for the $1,600 portion of the payment for PAGA penalties described in Paragraph 51.e which is not being paid to the LWDA), above.

h. <u>Settlement Payments to Settlement Class Members</u>. Only the following individuals will receive Settlement Payments under the Settlement Agreement: (1) Named Plaintiff and other Active Participants in the Action, as described above in Paragraph 51.d; and (2) Settlement Class Members. Settlement Payments will be calculated as follows:

i. The NSA will be divided by the total Shifts Worked by all Settlement Class Members during the Class Period as reflected in Defendant CACafe's records. All Settlement Class Members shall be paid an amount equal to their individual Shifts Worked during the Class Period, multiplied by the Shift Rate. Shifts worked shall be determined by the SA based on data to be provided by Defendant CACafe, as may be modified by the SA's resolution of any challenges.

ii. The Parties agree that under no circumstances shall Defendants be obligated to pay any amount under this Agreement to any Class Member other than Settlement Class Members. In addition, the Parties agree that in no event shall Defendants be obligated to pay more than the GSA. The Parties further agree that in no event (i) will Defendant CDS be required to pay more than $110,000 under this Settlement and this Agreement, and (ii) will Defendant Costco be required to pay anything under this Settlement and this Agreement.

iii. The Parties acknowledge and agree that the formula used to calculate Shifts Worked and individual Settlement Payments does not imply that all of the elements of damages

covered by the release are not being taken into account. The above formula was devised as a practical and logistical tool to simplify the claims process.

52. <u>No Credit Toward Benefit Plans</u>. The Settlement Payments made to Settlement Class Members under this Agreement shall not be utilized to calculate any additional benefits under any benefit plans to which any Settlement Class Members or Class Members may be eligible, including, but not limited to: profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, and any other benefit plan. Rather, it is the Parties' intention that this Agreement and the Settlement Payments made to Settlement Class Members under this Agreement includes any and all rights, contributions, or amounts, if any, to which any Settlement Class Members or Class Members may be entitled under any benefit plans.

53. <u>Taxation of Settlement Proceeds</u>. All Settlement Payments shall be allocated as follows.

a. The Parties agree that fifty percent (50%) of the amount distributed to each Settlement Class Member will be considered interest, and will be reported as such to each Settlement Class Member on an IRS Form 1099. The Parties agree that fifty percent (50%) of the amount distributed to each Settlement Class Member will be considered penalties and any other non-wage related amount, if any, and will be reported as such to each Settlement Class Member on an IRS Form 1099. There is no allocation to wages because Defendants dispute that Class Members were ever anything other than independent contractors and the Class Members were never compensated previously as employees. CACafe acknowledges and agrees that neither Costco nor CDS have made any representations regarding the tax consequences of any amounts paid or received pursuant to this Agreement, and CACafe will pay the employer's share of all federal, state and local payroll taxes and any other legal obligations, if any, required by law to be paid by an employer as a result of any amount paid under this Agreement being determined by any taxing authority to be wages. CACafe expressly agrees to also indemnify and hold Costco and CDS harmless from any amounts owed for any federal, state or local taxes, including, but not limited to, the payment of FICA, FUTA, Social Security taxes, or any other local, state or federal payroll tax liability. Settlement Class Members will be responsible for paying any personal income taxes owed on the Settlement Payments they receive.

**CLASS ACTION SETTLEMENT AGREEMENT AND STIPULATION**

b.     The SA will issue appropriate tax forms, if required, to each such Settlement Class Member consistent with the foregoing breakdown.

c.     All Parties represent that they have not received, and shall not rely on, advice or representations from other parties or their agents, including Class Members, regarding the tax treatment of payments under federal, state, or local law. In this regard, Defendants make no representations regarding the taxability of the Settlement Payments.

d.     Class Counsel will be issued an IRS Form 1099 for any fees and costs awarded by the Court pursuant to Paragraph 51.a-51.b. Except as provided in this Agreement, each Party shall bear his, her or its own attorneys' fees, costs, and expenses incurred in the prosecution, defense, or settlement of the Action. Class Counsel agrees that any allocation of fees between or among each of the Class Counsel or among the Class Counsel and any other attorney that may be representing Named Plaintiff or the Class shall be the sole responsibility of Class Counsel. Each Party to this Agreement acknowledges and agrees that no provision of this Agreement, and no written or oral communication or disclosure or other representation by Defendants and/or Released Parties is or was intended to be, nor shall be construed or be relied upon as, tax advice, and Named Plaintiff and Class Members shall not rely on Defendants and/or Released Parties for any tax advice with respect to the Settlement of this Action.

e.     The Named Plaintiff and other Active Participants in the Action, as described above in Paragraph 51.51.d, will be issued an IRS Form 1099 for any enhancement award approved by the Court pursuant to Paragraph 51.d. The enhancement awards payable to them shall be in addition to the Settlement Payments that they will receive.

54.     <u>Provisional Approval of Settlement</u>. Upon execution of this Agreement, Named Plaintiff shall file a motion in the Action requesting that the Court enter the Preliminary Approval Order based on an agreed-upon Settlement schedule, subject to Court approval:

a.     Seeking class certification on the terms set forth in this Agreement solely for purposes of class settlement;

b.     Preliminarily approving the proposed Settlement and this Agreement, including the payments to the Settlement Class Members, Class Counsel, the Named Plaintiff, the SA, and the LWDA;

c.    Preliminarily approving the appointment of the Named Plaintiff as representative of the Class for settlement purposes;

d.    Preliminarily approving the appointment of counsel for Named Plaintiff as Class Counsel;

e.    Appointing and approving a SA as chosen by the Parties and approved by the Court, to administer the notice, opt-out requests, objections and Settlement Payment procedures required by this Agreement;

f.    Approving the form of the Class Notice;

g.    Scheduling the Final Settlement Approval Hearing for consideration of final approval of this Agreement;

h.    Requiring that any Class Members who object to the Settlement Agreement submit to the SA any objection by the end of the Exclusion Period and that the Parties be given an opportunity to file written responses to any objection(s) with the Court;

i.    Approving the procedure for Class Members to submit Opt Out Requests, and setting a date after which no Class Members shall be allowed to submit Opt Out Requests; and

j.    Approving the procedure for Settlement Class Members to object to the Settlement.

Defendants shall not oppose Class Counsel's motions for preliminary approval and final approval of the Settlement so long as the motions and supporting papers are consistent with the terms of this Agreement.  Class Counsel shall provide Defendants with an opportunity of five (5) court days to review, and provide comments on the motions for preliminary and final approval of the Settlement before the motion and supporting papers are filed with the Court.  The Parties will meet and confer and agree upon the wording of the settlement packages to be sent to Class Members, as well as the proposed orders for preliminary and final approval before filing.  Failure of the Court to grant the Preliminary Approval Order will be grounds for the Parties to terminate the Settlement and the terms of the Agreement.

55.    <u>Notice Procedure</u>.

a.      *Settlement Administrator*. The Parties select Rust Consulting, Inc. ("Rust") as the third-party SA to distribute the Class Notice and the Settlement Payments and handle the tax reporting and field questions with a hotline. Rust (along with any of its agents) shall represent and warrant that it will: (a) provide reasonable and appropriate administrative, physical and technical safeguards for any personally identifiable information ("PII"), which it receives from Defendant CACafe; (b) not disclose the PII any party or third parties, including agents or subcontractors, without Defendant CACafe's consent; (c) not disclose or otherwise use the PII other than to carry out its duties as set forth herein; (d) promptly provide Defendant CACafe with notice if PII is subject to unauthorized access, use, disclosure, modification, or destruction; and (e) return or destroy the PII upon termination of its services.

b.      *Class Member Data*. Within fifteen (15) calendar days after filing of the Preliminary Approval Order, Defendant CACafe shall provide to the SA and Class Counsel a list of Class Members that identifies for each Class Member, last-known address, last-known cellular phone number, last-known email address, and the number of shifts(s) that the Class Member worked for Defendant CACafe as an in-store demonstrator. In addition, Defendant CACafe shall provide to the SA, but not to Class Counsel, each class member's Social Security number. From this information, the SA will determine qualifying Shifts Worked. Defendant CACafe agrees to consult with the SA as required to provide the list in a format reasonably acceptable for the duties of the SA. The SA and Class Counsel will keep the list confidential, use it only for the purposes described herein, take adequate safeguards to protect confidential or private information and return or certify the destruction of the information upon completion of the Settlement Administration process. The SA shall not provide or otherwise make accessible to Class Counsel class members' Social Security numbers unless Defendant CACafe provides express, written authorization to the SA to do so.

56.      *Class Notice*. Rust will send the Class Notice to each Class Member by First-Class U.S. Mail, text, and email (where email addresses and phone numbers are available from CACafe's electronic employment records or Class Counsel's records for class members), which includes information on how he/she may Opt Out of or Object to the Settlement, a procedure by which a Class Member may challenge the number of Shifts Worked identified on his/her Class Notice, and a weblink to a website set up by Class Counsel described in paragraph 90. The Notice sent to the Class Members shall state a minimum

amount each would receive if there are no individuals who opt out of the settlement, and state that this amount may increase. The Named Plaintiff will seek approval of the Parties' agreed-upon language in the Class Notice in the motion for preliminary approval and will seek permission for the Parties in conjunction with the SA to be able to correct immaterial errors on these forms or other mailed materials without approval from the Court, provided the changes do not alter the preliminary approval by the Court. Enclosed with all Class Notices shall be a postage-prepaid envelope, pre-printed with the following address:

*Marino v. CACafe, et al.* Class Action Administrator
c/o Rust Consulting, Inc.
[Address of Settlement Administrator]

a. *Settlement Administrator Duties.* Prior to mailing the Class Notice, Rust will update the addresses for the Class Members using the National Change of Address database and other available resources deemed suitable by Rust. To the extent this process yields a different address from the one supplied by Defendant CACafe ("Updated Address"), that Updated Address shall replace the address supplied by Defendant CACafe ("Last Known Address") and be treated as the new Last Known Address for purposes of this Agreement and for subsequent mailings in particular.

b. *Notice Procedure.* Within ten (10) days after receipt of the above information from Defendant CACafe, Rust shall send the Class Notice to each Class Member's Last Known Address or Updated Address (if applicable) via First-Class U.S. mail text, and email (where email addresses and phone numbers are available from CACafe's electronic records and/or Class Counsel's records for Class Members).

c. *Exclusion Period.* Class Members will have forty-five (45) days from the postmark of the initial mailing of the Class Notice by Rust to submit by First-Class U.S. mail their Opt Out Requests, with proof of date of submission to be the postmark date of the completed Opt Out Request. Class Members will also have forty-five (45) days to object to the Settlement by submitting a written objection to Rust that sets forth the basis of the objection pursuant to Paragraph 59, which the SA shall file or otherwise submit to the Court and serve on the Parties within 10 days after the end of the Exclusion Period.

d. *SA Follow-up efforts.*

**CLASS ACTION SETTLEMENT AGREEMENT AND STIPULATION**

i. Rust shall re-mail by First-Class U.S. mail the Class Notice returned by the Post Office with a forwarding address, and shall re-mail by First-Class U.S. mail the Class Notice to any Class Member who personally provides an updated address to the SA.

ii. In the event that the first mailing of the Class Notice to any Class Member is returned without a forwarding address, Rust will immediately perform skip trace(s) if necessary using social security numbers provided by Defendant CACafe and National Change of Address searches, as needed, to verify the accuracy of the addresses provided and will conduct a second round of mailings of the Class Notice by First-Class U.S. mail within an agreed number of days for those forms returned to sender. If no new information is ascertained by means of a skip trace, or if the Class Notice is returned to Rust after using an address obtained from a standard skip trace, Rust will immediately perform a manual "in-depth skip trace" to locate a more recent or accurate address. If an Updated Address is identified by this method, Rust will resend the Class Notice to the Updated Address within three (3) calendar days of identifying the Updated Address.

e. *Documenting Communications.* Rust shall date stamp documents it receives, including Opt Out Requests, Objections and any correspondences and documents from Class Members.

f. *Settlement Administrator Declaration.* At least ten (10) days prior to the filing of the motion for final approval, Rust shall prepare, subject to Class Counsel's and Defendants' input and approval, a declaration setting forth the due diligence and proof of mailing of the Class Notices, the results of Rust's mailings, including tracing and re-mailing efforts, and the Class Members' responses to those mailing and provide additional information deemed necessary to approve the settlement.

g. *SA Written Reports.* Each week during the Exclusion Period, Rust shall provide the Parties with a report listing the number of Class Members that submitted Opt Out Requests and Objections and challenges (*see infra* Paragraph 57(c)). Within seven (7) days of the close of the Exclusion Period, Rust will provide a final report listing the number of Class Members who submitted Opt Out Requests or Objections.

h. *SA Calculations of Settlement Payments.* Within seven (7) days after resolving all challenges made by Settlement Class Members, and following the Final Approval Order, Rust shall provide to the Parties a report showing its calculation of all Settlement Payments to be made to Settlement

Class Members. After receiving Rust's report, Class Counsel and Defendants' counsel shall review the same to determine if the calculation of payments to Settlement Class Members is consistent with this Agreement, and shall notify Rust if either counsel does not believe the calculation is consistent with the Agreement. After receipt of comments from counsel, Rust shall finalize its calculation of Settlement Payments, at least five (5) days prior to the distribution of such payments, and shall provide Class Counsel and Defendants' Counsel with a final report listing the amount of all payments to be made to each Settlement Class Member from the NSA. Rust will also provide information that is requested and approved by both Parties regarding its duties and other aspects of the Settlement and that is necessary to carry out the terms of the Settlement.

57. <u>Requirements for Recovery of Settlement Payments</u>.

a. *Class Members.* No claim form is necessary to participate in the Settlement. Unless a Class Member submits a valid and timely Opt Out Request (as described in Paragraph 58), a Class Member who takes no action will be a Settlement Class Member, bound by the Final Judgment, and will receive a payment from the NSA. All Class Members except for those who timely and validly opt out of the Settlement shall be bound by the release in this Agreement. However, only those Settlement Class Members who cash a check received under this Settlement will be deemed to have waived their claims under the Fair Labor Standards Act. Each settlement check sent to the Settlement Class Members will contain language advising them that by cashing the check, they are releasing any claims they may have under the Fair Labor Standards Act.

b. *Late Submissions.* Rust shall not accept as valid any Opt-Out Request postmarked after the end of the Exclusion Period, absent agreement from all Parties. It shall be presumed that, if an Opt-Out Request or Objection is not postmarked on or before the last day of the Exclusion Period, the Class Member did not return the Opt-Out Request or Objection in a timely manner.

c. *Challenges.* Class Members will have the right to challenge the number of Shifts Worked allocated to them. The following challenge procedure will be established for the Class Member to dispute information on which his/her payment amount is based: Challenges to the number of Shifts Worked shall be sent directly to Rust at the address indicated on the Class Notice. A Class Member challenging the number of Shifts Worked identified may also submit documentary evidence in order to

prove the number of Shifts Worked during the Class Period. Defendants shall have the right to respond to the challenge by any Settlement Class Member. No challenge to the number of Shifts Worked will be accepted unless sent by email to the Settlement Administrator's email address provided in the Notice, or by First-Class U.S. mail within forty-five (45) days from the initial mailing of the Class Notice by Rust, with proof of date of submission to be the postmark date. Additional time may be provided to a Class Member only upon a showing of good cause and within an amount of time determined by Rust that will not delay the distribution of Settlement Payments to other Class Members and in no event beyond the date of filing of the motion for final approval. Rust will inform Class Counsel and Defendants' Counsel in writing of any timely filed challenges and will determine all such disputes after consulting with the Parties regarding the number of Shifts Worked. Challenges will be resolved without hearing by Rust, who will make a decision based on Defendant CACafe's records and any documents or other information presented by the Class Member making the challenge, Class Counsel or Defendants. The SA's determination is final and binding without a right of appeal. Rust will inform the Parties of its final dispositions of all such challenges.

58. <u>Opt-Out Procedure</u>. Unless a Class Member timely opts out of the Settlement described in this Agreement, he/she shall be bound by the terms and conditions of this Agreement, and shall also be bound by the Final Judgment enjoining all Settlement Class Members from pursuing, or seeking to reopen, any of the Settled Claims against the Released Parties. A Class Member will not be entitled to opt out of the Settlement established by this Agreement unless he or she submits to the SA a request or notice of opting out via First-Class U.S. mail postmarked on or before the expiration of the Exclusion Period. The request must be in writing and include the Class Member's name, address, date, signature, and a request that he or she "opts out" of the Settlement.

a. Upon receipt of any Opt-Out Request within the Exclusion Period, Rust shall review the request to verify the information contained therein, and confirm that the request complies with the requirements of this Agreement.

b. Any Class Member who fails to submit via First-Class U.S. mail a timely, complete and valid Opt-Out Request shall be barred from opting out of this Agreement or the Settlement.

**CLASS ACTION SETTLEMENT AGREEMENT AND STIPULATION**

Rust shall not have the authority to extend the deadline for Class Members to file a request to opt out of the Settlement absent agreement by all Parties.

c.    Class Members shall be permitted to rescind in writing their request to opt out by submitting a written rescission statement to Rust no later than the Effective Date.

d.    If five percent (5%) or more of the Class Members (6 or more) timely opt out of the Settlement, any one of the Defendants shall have the sole and absolute discretion to withdraw from this Agreement within ten (10) days after expiration of the Exclusion Period. Defendants shall provide written notice of such withdrawal to Class Counsel. In the event that any of the Defendants elects to so withdraw, the withdrawal shall have the same effect as a termination of this Agreement for failure to satisfy a condition of Settlement, the Agreement shall become null and void and have no further force or effect, and all Settlement Payments deposited into the Qualified Settlement Fund by the Paying Defendants shall be returned in full to the Paying Defendants.

59.    Objections to Settlement. Any Settlement Class Member may object to the Settlement. Any such objection must be submitted to Rust in writing on or before the close of the Exclusion Period. Any such written Objection shall include the Class Member's name, address, and last four digits of his/her Social Security number, and state, in writing, the reason for the objection. The Parties shall be permitted to file responses to the Objection in addition to any motion for final approval documents. At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Settlement Class Members to file or serve written objections to the Settlement or appeal from the Order granting final approval and/or Final Judgment. Class Counsel shall not represent any Settlement Class Members with respect to any such objections.

60.    Final Fairness Hearing, Final Approval and Final Judgment.

a.    *Entry of Final Judgment.* At the Final Approval Hearing, Named Plaintiff will request, and Defendants will concur in said request, that the Court enter a Final Judgment consistent with this Agreement.

b.    *Motion.* Named Plaintiff will draft and file a motion for final approval in conformity with any requirements from the Court and will take other action to request the entry of Final Judgment in accordance with this Agreement. The motion for final approval and corresponding

paperwork will be subject to input and approval from Defendants and the proposed Judgment finally approving the Settlement shall be subject to the input from and approval by Defendants, provided that Defendants shall have five (5) court days from receipt to provide such input. Defendants will concur in or not object to said request that the Court enter Final Judgment finally approving this Agreement. In conjunction with the motion for final approval, Class Counsel shall file a declaration from Rust confirming that the Class Notice and related forms were mailed to all Class Members as required by this Agreement, as well as any additional information Class Counsel, with the input and approval of Defendants, deems appropriate to provide to the Court. Named Plaintiff will draft and file a separate motion requesting any attorneys' fees and costs and enhancement awards pursuant to the Agreement to be heard on the same day as the motion for final approval.

       c.    *Objections*. Before and/or at the Final Fairness Hearing, Named Plaintiff and Defendants, through their counsel of record, may address any written objections from Class Members or any concerns from Class Members who attend the hearing as well as any concerns of the Court.

       d.    *Order*. Named Plaintiff will also draft and submit a proposed Order of Final Approval and Final Judgment in the form that is consistent with this Agreement and subject to prior review, revision and approval by Defendants. The Parties shall take all reasonable efforts to secure entry of the Order of Final Approval and Final Judgment. If the Court rejects the Agreement, fails to enter the Order of Final Approval, and fails to enter the Final Judgment, this Agreement shall be void *ab initio*, and all Settlement Payments deposited into the Qualified Settlement Fund by the Paying Defendants shall be returned in full to the Paying Defendants, and Defendants shall have no obligation to make any payments under the Agreement, except for their agreed upon proportional share of any payments owed to Rust for services performed up to that time. The Named Plaintiff will submit a proposed Order of Final Approval subject to the review and approval of Defendants that will contain provisions:

           i.    Wherein the Court enters Final Judgment, finding that this Agreement and Settlement is fair, just, equitable, reasonable, adequate and in the best interests of the Class and was reached as a result of intensive, serious, and non-collusive arms-length negotiations and was achieved with the aid of an experienced mediator and in good faith as to each Class Member;

ii.      Affirming that each side will bear its own costs and fees (including attorneys' fees), except as provided by the Agreement, and that Defendants shall not be required to pay any amounts other than as set forth in the Agreement and the Order of Final Approval, and in no event any amount above the GSA;

iii.      That confirms the certification of the Class for purposes of Settlement;

iv.      That finds that the Settlement Administration process as carried out afforded adequate protections to Class Members, provided the best notice practicable, and satisfied the requirements of law and due process;

v.      That rejects any Objections to the Settlement;

vi.      That retains Court jurisdiction after entry of judgment to oversee administration and enforcement of the terms of the Agreement and the Court's Order that the Settlement Class Members be barred from pursuing, or seeking to reopen, Settled Claims against the Released Parties; and

vii.      That requires the Parties to carry out the provisions of this Agreement.

61.      <u>Post Final Approval Requirements and Procedures</u>. Following entry of the Court's Order Granting Final Approval of Settlement and Final Judgment, the Parties will act to assure the timely execution and fulfillment of all its provisions, including, but not limited to, the following:

a.      Should an appeal be taken from the Final Approval of the Settlement, all Parties will support the Order of Final Approval and Final Judgment on appeal except that Class Counsel shall retain, and Defendants agree not to oppose, the right to appeal any reduction by the Court of Class Counsel's requested attorneys' fees and/or costs;

b.      The Parties will assist Rust as needed or requested in the process of identifying and locating Settlement Class Members entitled to Settlement Payments from the NSA and assuring delivery of such payments;

c.      Class Counsel will assist Rust as needed or requested in completing the distribution of any uncashed checks to a *cy pres* recipient mutually agreed-upon by all the Parties; and

d.      Class Counsel will certify to the Court completion of all payments required to be made by this Settlement Agreement.

62.   <u>Payment of Settlement</u>.  The remittance of the GSA to Rust shall constitute full and complete discharge of the entire monetary obligation of Defendants under this Agreement.  No Released Party shall have any further monetary obligation or liability to Class Counsel, Named Plaintiff, or Settlement Class Members under this Agreement after receipt by the SA of the GSA.

a.     The Parties agree that the GSA will qualify as a settlement fund pursuant to the requirements of Section 468(B)(g) of the Internal Revenue Code of 1986, as amended, and Section 1.468B-1 *et seq.* of the income tax regulations.  Furthermore, the SA is hereby designated as the "Administrator" of the qualified Settlement funds for purposes of Section 1.468B-2(k) of the income tax regulations.

b.     The distribution of Settlement Payments to Settlement Class Members shall occur no later than the Settlement Proceeds Distribution Deadline.  Rust shall be deemed to have timely distributed Settlement Payments if it places said payment in the mail (First-Class U.S.).  When Rust receives notice from Settlement Class Members that they have not received such Settlement Payments due to changes of address or other circumstances, Rust shall be deemed to have timely distributed those Settlement Payments if (after satisfying itself that the amounts have not been received or negotiated) it re-mails the payments to the updated addresses or provides for delivery by other reasonable methods requested by such Settlement Class Members, provided that any and all requests for re-mailing shall be actually received and acknowledged by the SA at least two (2) weeks before the 150-day deadline referenced in Paragraphs 63 and 64 or will be deemed ineffective, ignored and have no effect and the original mailed amount shall be deemed timely distribution of the Settlement Payment.  Rust shall mail all Settlement Payments by the Settlement Proceeds Distribution Deadline.  No person shall have any claim against Rust, Defendants, Class Counsel, Defendants' counsel, or any other agent designated by Named Plaintiff or Defendants based upon the distribution of Settlement Payments made substantially in accordance with this Agreement or further orders of the Court.  At Defendants' option, checks in payment of amounts due to Settlement Class Members under the Settlement may contain a brief statement of waiver of such claims as part of the endorsement language.

c.    The distribution of attorneys' fees, costs, and any enhancement awards to the Named Plaintiff or other Active Participants shall occur no later than the payment date of the payment under the Settlement Proceeds Distribution Deadline.

d.    Upon transfer of the GSA to Rust, Defendants, the Released Parties, and Defendants' counsel shall have no further monetary liability or financial responsibility to Class Counsel or to any vendors or third parties employed by the Named Plaintiff or Class Counsel in connection with the Action.

e.    Paying Defendants will be refunded all funds deposited into the Qualified Settlement Fund, respectively, in the event that any of the terms or conditions of the settlement, including those set forth in this Agreement, are not fully and completely approved by the Court and satisfied, as provided for by this Agreement, or in the event that the Agreement is canceled, terminated or otherwise no longer effective, except in the event of a challenge to a denial of Class Counsel's fees and costs, or part of them, in which case the funds not awarded will remain in the Qualified Settlement Fund, pending any appeal, and the balance of the funds will be distributed in accordance with this Agreement.

63.    Settlement Class Members who are sent Settlement Payments shall have one hundred and fifty (150) calendar days after mailing by Rust to cash their settlement checks.

64.    If such Settlement Class Members do not cash their checks within that period, those checks will become void and a stop payment will be placed on the uncashed checks. Settlement checks that are not cashed within one hundred and fifty (150) days of mailing shall be delivered to a *cy pres* recipient mutually agreed-upon by all the Parties. In such event, those Settlement Class Members will be deemed to have waived irrevocably any right in or claim to a Settlement Payment. Settlement Class Members who fail to negotiate their check(s) in a timely fashion shall, like all Settlement Class Members who did not validly opt out of the Settlement, remain subject to the terms of the Settlement and the Final Judgment.

65.    <u>No Future Employment or Performance of Demos in Costco Warehouses</u>. Named Plaintiff hereby waives any rights to future employment with the Released Parties. Named Plaintiff agrees that Defendants are not obligated to offer employment to her, regardless of the circumstances, at any time in the future. In addition, Named Plaintiff agrees to never knowingly accept an assignment from

a vendor or staffing agency to perform a demonstration or road show in a Costco warehouse again. Named Plaintiff agrees that this is a negotiated clause of this Agreement and not evidence of any claimed retaliation or discrimination.

66.     <u>Mutual Releases By and Between Defendants</u>. It is understood and agreed by the Parties, and each of them, that a material term of the Parties' settlement and this Agreement is each Defendant's express agreement to release and waive any and all, in contract and in equity, claims each may have against the other Defendants, including but not limited to, claims for indemnity and reimbursement of their litigation expenses (including attorneys' fees, expert fees, and costs), incurred while defending themselves against the claims in the Action. This release as pertains to any indemnity and reimbursement rights against CACafe shall be null and void in the event of any bankruptcy filing by CACafe, Zheng, or Chao, or any of them (that is, any indemnity and reimbursement rights against CACafe shall be restored upon any bankruptcy filing), if said bankruptcy results in the Parties' settlement not being effectuated and Costco and/or CDS do not obtain a release of claims as provided herein.

67.     <u>Binding Effect of Agreement on Settlement Class Members</u>.  Subject to final Court approval, all Settlement Class Members shall be bound by this Agreement, and Final Judgment shall be entered in the Action barring relitigation of any Settled Claims against Defendants and/or the Released Parties.  In addition, unless the Class Member opts out of the Settlement described in this Agreement, he/she shall be bound by the Court's Order of Final Approval and Final Judgment enjoining all Class Members from pursuing, or seeking to reopen, Settled Claims against the Released Parties.  As set forth more fully in Paragraph 70, if the Court does not enter an Order of Final Approval and Final Judgment granting final approval of the Settlement, which becomes final, the Settlement shall become null and void, and its terms and all documents setting out its terms shall be inadmissible in further litigation of this Action or any other case.

68.     <u>Non-Interference with Opt-Out Procedure</u>.  The Parties and their counsel agree that they shall not seek to solicit or otherwise encourage Class Members to submit requests for exclusion (Opt-Out Requests) or objections to the Settlement or to appeal from the Final Judgment.

69.     <u>Waiver of Appeal</u>.  Subject to preliminary and final approval of this Settlement, Named Plaintiff and all Class Members, except those Class Members who make timely and valid objections

pursuant to the terms of this Agreement, expressly waive the right to appeal. Notwithstanding this paragraph or any other provision of this Agreement, Class Counsel retain their right to appeal a reduction of attorneys' fees and/or costs, consistent with this Agreement, and Defendants agree not to oppose such an appeal relating to any reduction of Class Counsel's fees and costs. Such appeal shall not delay administration of the Settlement and all payments approved by the Court and shall only impact the disbursement of any non-approved fees and costs.

70. <u>Automatic Voiding of Agreement if Settlement Not Finalized</u>. If for any reason the Effective Date does not occur, the Settlement shall be null and void and the orders, judgment, and dismissal to be entered pursuant to this Agreement shall be vacated; and the Parties will be returned to the status quo prior to entering this Agreement with respect to the Action, as if the Parties had never entered into this Agreement. In addition, in such event, the Agreement and all negotiations, court orders and proceedings relating thereto shall be without prejudice to the rights of any and all Parties hereto, and evidence relating to the Agreement and all negotiations shall not be admissible or discoverable in the Action or otherwise.

71. <u>No Injunctive Relief</u>. The Parties agree that the Settlement does not include injunctive relief against Defendants or the Released Parties.

72. <u>Confidentiality and Non-Disparagement</u>.

a. The terms of the Settlement shall remain confidential, except as to the Parties, until the filing of the Motion for Preliminary Approval, but the Parties will be able to disclose to the Court, when and as necessary before preliminary approval, that they have reached an agreement in principle, subject to completion of a final Agreement and Court approval; and after such disclosure is made to the Court, all Parties may disclose the same information to others, subject to the further provisions and restrictions in this Agreement.

b. The Parties and their counsel will not initiate public relations or media inquiries about the Settlement. This shall not restrict Class Counsel in any way from responding to inquiries posed by Class Members.

c. Named Plaintiff and Class Counsel agree to maintain the confidentiality of any documents produced, formally or informally, during the course of the Action. Named Plaintiff and Class

Counsel agree to return to Defendants' counsel or destroy any information designated as confidential during the course of the Action, including but not limited to any information and/or documents provided to Class Counsel for purposes of mediation. In addition, Class Counsel agrees that any information they receive or have received in connection with this settlement may be used for this Action only, and may not be used for any purpose or in any other action or proceeding. Class Counsel agrees that, other than as to general descriptions of litigation risk associated with solvency-related concerns, CACafe's solvency-related documents produced for mediation and the facts therein will only be described to the Court in redacted submissions accompanying the preliminary approval motion, concerning which Class Counsel will also file a motion to file under seal. CACafe agrees to cooperate in providing information to the Court, as necessary, relating to its solvency-related issues including providing an affidavit in support of the anticipated motion(s) to seal information and/or documents related to CACafe's solvency. The parties agree that such information will be filed under seal because of its sensitive, commercial nature.

       d.      Named Plaintiff and her counsel agree that they will not make any disparaging remarks about any of the Defendants and/or Released Parties. Defendants Jane Zeng and Ted Chao, and the Office of the General Counsel for Costco (which will handle all media inquiries about the action on behalf of Defendant Costco), agree that they will not make any disparaging remarks about Named Plaintiff. Defendant CDS agrees that in response to any media inquiry about the action directed to CDS, CDS will not provide any comment and/or will only state something to this effect: "No comment."

       e.      Defendants shall direct all inquiries by the Class to Class Counsel and/or Rust who shall provide general information about the lawsuit, including responding to questions about the lawsuit, by providing neutral information about the agreement consistent with the Agreement.

       73.    <u>Invalidation of Agreement for Failure to Satisfy Conditions</u>. The terms and provisions in Paragraphs 1 through 90 of this Agreement are not mere recitals, but are deemed to constitute contractual terms. The Court may allocate less to the Named Plaintiff, Class Counsel, and/or the LWDA than indicated in Paragraphs 51.a, 51.b, 51.d and 51.e without impacting the validity and enforceability of the Agreement. The Court may allocate less to Rust than indicated in Paragraph 51.c provided the

actual amount spent by Rust is less than the maximum set forth in that Paragraph. Except for the provisions set forth in the preceding two sentences, or the event of a disapproval or partial disapproval and any associated appeal regarding unapproved attorneys' fees and costs, which shall not operate to delay or terminate this Agreement, in the event that any of the terms or conditions set forth in Paragraphs 1 through 90 of this Agreement are not fully and completely approved by the Court and satisfied, this Agreement shall terminate at the option of any of the Defendants or Plaintiff, or both, and all terms of the Agreement, including any payments by Defendants, shall be null and void. Without limiting the generality of the foregoing, if this Agreement is terminated for failure to satisfy any of the terms or conditions of Paragraphs 1 through 90 of this Agreement:

      a.     Defendants shall not be obligated to create or maintain any type of settlement fund, and shall not be obligated to make any Settlement Payment to any Class Member, and/or any payment to Class Counsel and/or to the Named Plaintiff.

      b.     The Agreement and all negotiations, Court orders and proceedings relating thereto shall be without prejudice to the rights of the Named Plaintiff, Class Members, and Defendants, each of whom shall be restored to their respective positions existing prior to the execution of this Agreement, and evidence relating to the Agreement and all negotiations shall not be discoverable or admissible in the Action or any other litigation;

      c.     Defendants will not have waived, and instead expressly reserve, their rights to challenge the propriety of class certification for any purpose; and

      d.     To the extent one exists, the Preliminary Approval Order shall be vacated in its entirety and neither this Agreement, the Preliminary Approval Order, nor any other document in any way relating to any of the foregoing, shall be relied upon, referred to or used in any way for any purpose in connection with any further proceedings in this Action or any related action, including class certification proceedings.

      74.     <u>Notices</u>. All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing, and shall be delivered by First-Class U.S. mail to the attorneys listed in the caption above and to Rust, with additional copies to be sent via electronic mail.

75.   Modification in Writing.  This Agreement may be altered, amended, modified or waived, in whole or in part, only in a writing signed by all signatories to this Agreement.  This Agreement may not be amended, altered, modified or waived, in whole or in part, orally.  Any waiver of any provision of this Agreement shall not constitute a waiver of any other provision of this Agreement unless expressly so indicated.

76.   Ongoing Cooperation.  Named Plaintiff and Defendants, and each of their respective counsel, shall cooperate in good faith to execute all documents and perform all acts necessary and proper to effectuate and implement the terms of this Agreement, including but not limited to drafting and submitting the Motions for Preliminary and Final Approval, and defending the Agreement and Final Judgment against objections and appeals.  The Parties to this Agreement shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court or otherwise, to effectuate this Agreement and the terms set forth herein.

77.   No Prior Assignments.  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

78.   Binding on Successors.  This Agreement shall be binding and shall inure to the benefit of the Parties and their respective successors, assigns, executors, administrators, heirs and legal representatives, including the Released Parties.

79.   Entire Agreement.  This Agreement constitutes the full, complete and entire understanding, agreement and arrangement between Named Plaintiff and the Class Members on the one hand, and Defendants and Released Parties on the other hand, with respect to the Settlement of the Action and the Settled Claims against the Released Parties, including Defendants.  This Agreement supersedes any and all prior oral or written understandings, agreements and arrangements between the Parties with respect to the Settlement of the Action and the Settled Claims against the Released Parties.  Except those set forth and included expressly in this Agreement, there are no other agreements, covenants, promises, representations or arrangements between the Parties with respect to the Settlement of the Action and the Settled Claims against the Released Parties.  The Parties explicitly recognize California Civil Code

Section 1625 and California Code of Civil Procedure Section 1856(a), which provide that a written agreement is to be construed according to its terms, and may not be varied or contradicted by extrinsic evidence, and agree that no such extrinsic oral or written representations or terms shall modify, vary, or contradict the terms of this Agreement.

80.     Execution in Counterparts.  This Agreement may be signed in one or more counterparts. All executed copies of this Agreement, and photocopies thereof (including facsimile or email copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

81.     Captions.  The captions and section numbers in this Agreement are inserted for the reader's convenience, and in no way define, limit, construe, or describe the scope or intent of the provisions of this Agreement.

82.     Governing Law.  This Agreement shall be interpreted, construed, enforced, and administered in accordance with the laws of the State of California, without regard to conflict of law rules.

83.     Reservation of Jurisdiction.  Notwithstanding the entry and filing of Final Judgment, the Court shall retain jurisdiction under the Court's applicable rules and Federal Rules of Civil Procedure, for purposes of interpreting and enforcing the terms of this Agreement.

84.     Mutual Preparation.  The Parties have had a full opportunity to negotiate the terms and conditions of this Agreement.  Accordingly, this Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arms-length negotiations between the Parties, all Parties have contributed to the preparation of this Agreement.

85.     Warranties and Representations.  With respect to themselves, each of the Parties to this Agreement and/or their agents or counsel represent, covenant and warrant that (a) they have full power and authority to enter into and consummate all transactions contemplated by this Agreement and have duly authorized the execution, delivery and performance of this Agreement, and (b) the person executing this Agreement has the full right, power and authority to enter into this Agreement on behalf of the Party for whom he/she has executed this Agreement, and the full right, power and authority to execute any and

all necessary instruments in connection herewith, and to fully bind such Party to the terms and obligations of this Agreement, except that the Parties understand that the Named Plaintiff and Class Counsel only have the power to bind Class Members to the extent this Agreement is approved by the Court.

86. <u>Representation by Counsel</u>.  The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement, and that this Agreement has been executed with the consent and advice of counsel.  Further, the Named Plaintiff and Class Counsel warrant and represent that there are no liens on the Agreement, and that after entry by the Court of the Final Judgment, Defendants, through the SA, may distribute funds to Settlement Class Members, Class Counsel, and the Named Plaintiff as provided by this Agreement.

87. <u>Authorization by Named Plaintiff</u>.  Named Plaintiff authorizes Class Counsel to sign this Agreement and further agrees not to request to be excluded from the Class and not to object to any terms of this Agreement.  Any such request for exclusion (Opt Out Request) or objection shall therefore be void and of no force or effect.

88. <u>Stipulated Judgment Against CACafe, Zheng, and Chao:</u> At the time of the execution of the Memorandum Of Understanding (MOU) in this case, Defendants CACafe, Zheng, and Chao signed a Stipulated Judgment (a copy of which is attached hereto as Exhibit A), by which Plaintiffs, including the settlement class members, will be entitled to have Judgment entered in their favor in the amount of $1,000,000 in the event of any bankruptcy filing by CACafe, Zheng, or Chao, or any of them, if said bankruptcy results in the Parties' settlement of the Action not being concluded and completed according to the remaining terms of the settlement. Said Stipulated Judgment shall be held by Plaintiffs' counsel and not filed unless CACafe, Zheng or Chao, or any of them fail to pay their $530,000 portion of the total settlement amount, and/or file for bankruptcy protection.

89. <u>Qualified Settlement Fund</u>: The Paying Defendants deposited $640,000 into a Qualified Settlement Fund (QSF) maintained by the SA, after the signing of the MOU. Paying Defendants will be refunded all funds deposited into the QSF in the event that any of the terms or conditions of the settlement are not fully and completely approved by the Court and satisfied, or in the event that the Agreement is canceled, terminated or otherwise no longer effective, except as otherwise provided in this Agreement,

*e.g.,* concerning unapproved fees and costs, which shall remain in the QSF pending any appeal and be disbursed at the conclusion of any such appeal.

90. <u>Website.</u> Class Counsel shall set up a website on the www.bryanschwartzlaw.com domain which will be used to provide settlement documents and other case-related documents online for Class Members' review. The website's content will be neutral and for informational and settlement administration purposes only, and will not state anything derogatory or disparaging about Defendants and/or the Released Parties. Specifically, the website shall only contain a bare bones neutral statement about the claims alleged, the names of the parties, that Defendants deny any liability, that the Court hasn't made any determinations about the merits of Plaintiff's claims, and will provide information about any future approval hearings, along with any changes to the hearing schedule, if any. Documents to be included on the website will include the operative First Amended Complaint, the long form Settlement Agreement, the Motion for Preliminary Approval, the Motion for Final Approval, and the Orders issued by the court re same. Any disputes between the parties related to the content of the website shall be attempted to be resolved by the parties, in good faith, and if a resolution cannot be reached, the unresolved issues shall be briefed to the court, who shall make a final determination about the website's content.

IT IS SO AGREED:

Dated: September 18, 2018        By: *Leona Marino*
                                 _____
                                 Leona Marino, Plaintiff

Dated: September__, 2018         By: _____
                                 CACafe, Inc. Representative

Dated: September__, 2018         By: _____
                                 Jane Zheng

*e.g.*, concerning unapproved fees and costs, which shall remain in the QSF pending any appeal and be disbursed at the conclusion of any such appeal.

90. <u>Website</u>. Class Counsel shall set up a website on the www.bryanschwartzlaw.com domain which will be used to provide settlement documents and other case-related documents online for Class Members' review. The website's content will be neutral and for informational and settlement administration purposes only, and will not state anything derogatory or disparaging about Defendants and/or the Released Parties. Specifically, the website shall only contain a bare bones neutral statement about the claims alleged, the names of the parties, that Defendants deny any liability, that the Court hasn't made any determinations about the merits of Plaintiff's claims, and will provide information about any future approval hearings, along with any changes to the hearing schedule, if any. Documents to be included on the website will include the operative First Amended Complaint, the long form Settlement Agreement, the Motion for Preliminary Approval, the Motion for Final Approval, and the Orders issued by the court re same. Any disputes between the parties related to the content of the website shall be attempted to be resolved by the parties, in good faith, and if a resolution cannot be reached, the unresolved issues shall be briefed to the court, who shall make a final determination about the website's content.

IT IS SO AGREED:

Dated: September __, 2018          By: _____
                                        Leona Marino, Plaintiff


Dated: September 20, 2018          By: _____
                                        CACafe, Inc. Representative


Dated: September 20, 2018          By: _____
                                        Jane Zheng

1    Dated: September 20, 2018            By: _____
                                              Ted Chao
2

3

4    Dated: September___, 2018            By: _____
                                              Costco Wholesale Corporation
5                                             Representative

6

7
     Dated: September___, 2018            By: _____
8                                             Club Demonstration Services, Inc.
                                              Representative
9

10   APPROVED AS TO FORM:

11    Dated: September___, 2018           BRYAN SCHWARTZ LAW

12

13                                        By: _____
14                                            Bryan Schwartz
                                              Eduard Meleshinsky
15                                        Attorneys for Plaintiff LEONA MARINO

16
      Dated: September___, 2018           LAW OFFICES OF SAM X.J. WU, APC
17

18

19                                        By: _____
20                                            Alexei Brenot
                                              Attorneys for Defendants
21                                            CACAFE, INC., JANE ZHENG,
                                              and TED CHAO
22

     Dated: September___, 2018            SEYFARTH SHAW LLP
23

24

25                                        By: _____
26                                            Catherine M. Dacre
                                              Justin T. Curley
27                                            Attorneys for Defendant COSTCO
                                              WHOLESALE CORPORATION
28

**CLASS ACTION SETTLEMENT AGREEMENT AND STIPULATION**

| | |
|---|---|
| Dated: September___, 2018 | By: _____<br>Ted Chao |
| Dated: September 17, 2018 | By: _____<br>Costco Wholesale Corporation<br>Representative |
| Dated: September___, 2018 | By: _____<br>Club Demonstration Services, Inc.<br>Representative |

APPROVED AS TO FORM:

Dated: September___, 2018                 BRYAN SCHWARTZ LAW


                                          By: _____
                                              Bryan Schwartz
                                              Eduard Meleshinsky
                                              Attorneys for Plaintiff LEONA MARINO

Dated: September___, 2018                 LAW OFFICES OF SAM X.J. WU, APC


                                          By: _____
                                              Alexei Brenot
                                              Attorneys for Defendants
                                              CACAFE, INC., JANE ZHENG,
                                              and TED CHAO

Dated: September 29, 2018                 SEYFARTH SHAW LLP


                                          By: _____
                                              Catherine M. Dacre
                                              Justin T. Curley
                                              Attorneys for Defendant COSTCO
                                              WHOLESALE CORPORATION

CLASS ACTION SETTLEMENT AGREEMENT AND STIPULATION

Dated: September__, 2018                    By: _____
                                                 Ted Chao

Dated: September__, 2018                    By: _____
                                                 Costco Wholesale Corporation
                                                 Representative

Dated: September__, 2018                    By: _____
                                                 Club Demonstration Services, Inc.
                                                 Representative

APPROVED AS TO FORM:

Dated: September__, 2018                    BRYAN SCHWARTZ LAW

                                            By: _____
                                                 Bryan Schwartz
                                                 Eduard Meleshinsky
                                                 Attorneys for Plaintiff LEONA MARINO

Dated: September 20 2018                     LAW OFFICES OF SAM X.J. WU, APC

                                            By: _____
                                                 Alexei Brenot
                                                 Attorneys for Defendants
                                                 CACAFE, INC., JANE ZHENG,
                                                 and TED CHAO

Dated: September__, 2018                    SEYFARTH SHAW LLP

                                            By: _____
                                                 Catherine M. Dacre
                                                 Justin T. Curley
                                                 Attorneys for Defendant COSTCO
                                                 WHOLESALE CORPORATION

39
CLASS ACTION SETTLEMENT AGREEMENT AND STIPULATION

| | |
|---|---|
| Dated: September___, 2018 | By: _____ |
| | Ted Chao |
| | |
| Dated: September___, 2018 | By: _____ |
| | Costco Wholesale Corporation |
| | Representative |
| | |
| Dated: September___, 2018 | By: _____ |
| | Club Demonstration Services, Inc. |
| | Representative |

APPROVED AS TO FORM:

Dated: September 1, 2018          BRYAN SCHWARTZ LAW

By: _____
       Bryan Schwartz
       Eduard Meleshinsky
Attorneys for Plaintiff LEONA MARINO

Dated: September___, 2018          LAW OFFICES OF SAM X.J. WU, APC

By: _____
       Alexei Brenot
       Attorneys for Defendants
       CACAFE, INC., JANE ZHENG,
       and TED CHAO

Dated: September___, 2018          SEYFARTH SHAW LLP

By: _____
       Catherine M. Dacre
       Justin T. Curley
       Attorneys for Defendant COSTCO
       WHOLESALE CORPORATION

Dated: ~~September~~ October 2, 2018                    LITTLER MENDELSON, P.C.


                                                        By: _____
                                                            Fermin H. Llaguno
                                                            Oliver B. Dreger
                                                            Attorneys for Defendant CLUB
                                                            DEMONSTRATION SERVICES, INC.

# EXHIBIT A

1    Bryan Schwartz (SBN 209903)
     bryan@bryanschwartzlaw.com
2    Eduard Meleshinsky (SBN 300547)
     eduard@bryanschwartzlaw.com
3    BRYAN SCHWARTZ LAW
     1330 Broadway, Suite 1630
4    Oakland, California 94612
     Tel: (510) 444-9300
5    Fax: (510) 444-9301

6    Attorneys for Plaintiff LEONA MARINO
     Individually and all others similarly situated
7

8                    UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   LEONA MARINO, on behalf of herself and       Case No. 4:16-cv-06291-YGR
     all other similarly situated,
12                                                  ASSIGNED TO THE HON. YVONNE
                     Plaintiff,                     GONZALEZ ROGERS
13
            vs.                                     **STIPULATED JUDGMENT**
14
     CACAFE, INC., JANE ZHENG, TED
15   CHAO, COSTCO WHOLESALE
     CORPORATION, CLUB
16   DEMONSTRATION SERVICES, INC., and
     DOES 1 through 10 inclusive,
17
                     Defendants.
18

19

20

21

22

23

24

25

26

27

28

                                        1

Upon consideration of the Settlement Agreement and General Release (the "Agreement") entered into by Plaintiff Leona Marino, individually and on behalf of all members of the class similarly situated (collectively "Plaintiffs"), on the one hand, and Defendants CACafe, Inc., Jane Zheng, Ted Chao, Costco Wholesale Corporation and Club Demonstration Services, Inc. (together, "Defendants"), and the Declaration in Support of Entry of Stipulated Judgment submitted by Plaintiffs, **JUDGMENT IS HEREBY ENTERED IN FAVOR OF PLAINTIFFS AND AGAINST DEFENDANTS CACAFE, INC., JANE ZHENG, AND TED CHAO ("CACAFE DEFENDANTS"), AS FOLLOWS**:

(1) CACafe Defendants are liable to Plaintiffs and shall pay Plaintiffs the total amount of $1,000,000, less any amounts previously paid by the CACafe Defendants towards the amounts owed under the Agreement reached in the above-entitled matter, and which includes the following amounts:

    a. The remaining sum of $_____ in damages, reasonable attorneys' fees and costs incurred by Plaintiff.

(2) CACafe Defendants are liable to Plaintiff and shall pay $_____ in reasonable attorneys' fees and costs incurred by Plaintiff from the date of default through the date hereof in seeking to enforce the Agreement.

(3) The Stipulated Judgment amount of $_____ from paragraph 1(a) shall accrue interest at the legal rate of 10% per annum from the date hereof until paid in full. No interest shall accrue as to the stipulated judgment amount from paragraph 2.

The amount referenced in paragraph 2, set forth above, includes only those attorneys' fees and costs incurred by Plaintiff after any default by CACafe Defendants of the fully executed Memorandum of Understanding ("MOU"), to which this Stipulated Judgment is attached as Exhibit A. The amount referenced in paragraph 2 does not and may not include any attorneys' fees and costs incurred prior to the date of any default of the fully executed MOU – all pre-MOU attorney' fees and costs are provided for under paragraph 1, set forth above.

**IT IS SO ORDERED**.

Date:_____

_____
U.S. District Court Judge

**STIPULATED AND AGREED AS TO FORM AND CONTENT:**

**Plaintiff:**

_____                    Dated: May 29 , 2018
Leona Marino

**CACafe Defendants:**

_____                    Dated: May _____, 2018
CACafe, Inc. Representative:

_____                    Dated: May _____, 2018
Jane Zheng

_____                    Dated: May _____, 2018
Ted Chao

**IT IS SO ORDERED**.

Date:_____

_____
U.S. District Court Judge

**STIPULATED AND AGREED AS TO FORM AND CONTENT:**

**Plaintiff:**

_____          Dated: May _____, 2018
Leona Marino

**CACafe Defendants:**

_____          Dated: ~~May~~ June 2 , 2018
CACafe, Inc. Representative:

_____          Dated: May _____, 2018
Jane Zheng

_____          Dated: May _____, 2018
Ted Chao

**IT IS SO ORDERED**.

Date:_____

_____
U.S. District Court Judge

**STIPULATED AND AGREED AS TO FORM AND CONTENT:**

**Plaintiff:**

_____                    Dated: May _____, 2018
Leona Marino

**CACafe Defendants:**

_____                    Dated: May _____, 2018

CACafe, Inc. Representative:

_____                    Dated: ~~May~~ June 2 _____, 2018
Jane Zheng

_____                    Dated: ~~May~~ June 2 _____, 2018
Ted Chao

# EXHIBIT B

Marino v CACafe Claims Administrator
c/o Rust Consulting Inc – 6182
P.O. Box 54
Minneapolis, MN 55440-0054

## IMPORTANT LEGAL MATERIALS



UAA <<SequenceNo>>

<<Name 1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<City>> <<State>> <<Zip 10>>
<<CountryName>>

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONA MARINO, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>        Plaintiff,<br><br>     v.<br><br>CACAFE, INC., JANE ZHENG, TED CHAO, COSTCO WHOLESALE CORPORATION, AND CLUB DEMONSTRATION SERVICES, INC.<br><br>        Defendants. | Case No. 4:16-cv-06291-YGR<br><br>**NOTICE OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Honorable Yvonne Gonzalez Rogers |

### IMPORTANT NOTIFICATION TO POTENTIAL CLASS MEMBERS

**TO:** ALL INDIVIDUALS WHO WORKED AS CACAFE IN-STORE DEMONSTRATORS IN COSTCO WAREHOUSES FROM OCTOBER 31, 2012 THROUGH DECEMBER 13, 2018:

Please read this notice carefully and in its entirety. A federal court authorized this notice. This is not a solicitation from a lawyer.

A $640,000 settlement fund has been created to pay claims of CACafe In-store Demonstrators who worked in Costco warehouses in order to settle a wage and hour lawsuit.

According to CACafe records, you performed <<WorkWeeks>> demonstrations as a CACafe In-store Demonstrator in Costco warehouses between October 31, 2012 and December 13, 2018.

Your estimated share of the settlement is $<<EstimatedAward>>. This is the estimated gross amount you will receive if you do not exclude yourself from the settlement and the court grants final approval of the settlement.

- The settlement will provide $640,000 to pay claims of CACafe In-store Demonstrators who worked in Costco warehouses between October 31, 2012 and December 13, 2018.

- The settlement resolves claims of CACafe In-store Demonstrators in a lawsuit that alleged that Defendants improperly treated them as independent contractors. The lawsuit asserted causes of action against Defendants for: (1) failure to pay overtime wages; (2) failure to pay minimum wage compensation; (3) failure to pay earned wages upon discharge; (4) failure to provide timely, accurate, itemized wage statements; (5) failure to provide and/or authorize meal and rest periods; (6) failure to reimburse business expenses; (7) unlawful and/or unfair business practices in violation of California Business and Professions Code; and (8) penalties under the California Labor Code Private Attorneys General Act of 2004.

- Defendants deny that they are liable for any of the claims. Defendants Costco and CDS further deny that that they jointly employed CACafe In-store Demonstrators. However, in light of the risk and expense of proceeding to trial, Defendants, Class Counsel and Plaintiff believe that this is a fair settlement of the class and collective claims.

| YOUR OPTIONS AND LEGAL RIGHTS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING AND RECEIVE A SETTLEMENT PAYMENT** | If you do nothing, you will receive a settlement payment which is likely equal to or greater than your "estimated allocation" stated above, assuming that the Court approves the settlement. The estimated allocation is based on the number of demonstrations you performed as a CACafe In-store Demonstrator at Costco warehouses within the legally relevant period. If you do nothing, a check will arrive in the mail. The back of the check will explain that by cashing the check, you are agreeing to release all claims covered by this Settlement, and will be opting also to exercise and release your claims under the federal Fair Labor Standards Act. |
| **EXCLUDE YOURSELF** | If you affirmatively write to exclude yourself (*i.e.*, "opt out" of the case), you will receive no payment from this settlement. However, you would be free to pursue any claims separately against Defendants. The steps to exclude yourself are explained below. |
| **OBJECT** | If you wish to challenge the terms of the settlement, you may file an objection with the Court, setting forth the reasons why you oppose the settlement. However, in order to object to the settlement you cannot exclude yourself from the settlement. You may also appear in Court and explain why you do not like the settlement or use an attorney to appear for you, at your own expense. |

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**                                                                              **PAGE 3**

    1. Why did I get this notice package?
    2. What is this lawsuit about?
    3. What is a class action?
    4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT**                                                                       **PAGE 3**

    5. How do I know if I am part of the settlement?
    6. Are there exceptions to being included?
    7. I am still not sure if I am included.
    8. For former employees: will this affect my severance?

**THE SETTLEMENT BENEFITS – WHAT YOU GET**                                                         **PAGE 4**

    9. What does the settlement provide?
    10. How much will my payment be?

**YOU WILL RECEIVE A PAYMENT UNLESS YOU AFFIRMATIVELY OPT OUT**                                     **PAGE 4**

    11. How can I get a payment?
    12. When would I get my payment?
    13. What am I giving up to get a payment?
    14. What if I believe I am not being credited for the right number of demonstrations?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**                                                         **PAGE 5**

    15. How do I get out of the settlement?
    16. What happens if I do nothing?
    17. What are claims under the Fair Labor Standards Act?

**THE LAWYERS REPRESENTING THE CLASS**                                                             **PAGE 6**

    18. Do I have a lawyer in the case?
    19. How will the lawyers and Class Representative Plaintiff be paid?

**OBJECTING TO THE SETTLEMENT**                                                                    **PAGE 6**

    20. How do I tell the Court that I challenge all or some of the settlement terms?
    21. What's the difference between objecting, on the one hand, and excluding myself (*i.e.*, "opting out") from the settlement, on the other?

22. When and where will the Court decide whether to approve the settlement?
23. Do I have to come to the hearing?
24. May I speak at the hearing?

**GETTING MORE INFORMATION**                                    **PAGE 7**

25. Are there more details about the settlement?
26. How do I get more information?

## BASIC INFORMATION

### 1. Why did I get this notice package?

CACafe's records indicate that you worked as a CACafe In-store Demonstrator at Costco warehouses between October 31, 2012 and December 13, 2018 (the "Class Period").

You received this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to finally approve the settlement. If the Court approves it, and after any objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement requires.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as *Marino v. CACafe, Inc. et al.*, Case No. 4:16-cv-06291-YGR. The individual who brought the suit is called the Plaintiff, and CACafe, Inc., Jane Zheng, Ted Chao, Costco Wholesale Corporation, and Club Demonstration Services, Inc. are the Defendants.

### 2. What is this lawsuit about?

The lawsuit claims that Defendants misclassified CACafe In-store Demonstrators as independent contractors under state and federal overtime laws and thereby: (1) failed to pay overtime when they worked more than eight hours in a day or forty hours in a week; (2) failed to pay at least minimum wage compensation for all hours worked; (3) failed to provide rest and meal breaks; (4) failed to provide complete and accurate wage statements; (5) failed to pay all wages due at the time of discharge or resignation; (6) failed to reimburse for necessary business expenses; (7) as a result of the foregoing, engaged in unfair or unlawful business practices in violation of the California Business and Professions Code; and (8) as a result of the foregoing, also owe penalties under the California Private Attorneys General Act.

The Court has not issued any ruling on the merits of Plaintiff's claims, and Defendants deny that they are liable for any of the claims. Defendants Costco and CDS further deny that that they jointly employed CACafe In-store Demonstrators.

### 3. What is a class action?

In a class action, a Class Representative (in this case Plaintiff Leona Marino, representing the Class and Collective), sues on behalf of people who allegedly have similar claims ("Class Members"). The Court can make rulings affecting all Class Members (e.g. approving the parties' settlement), except for those who exclude themselves from the Class.

### 4. Why is there a settlement?

The Court did not issue a judgment, or any rulings on the merits, in favor of Plaintiff or Defendants. Instead, the parties reached a negotiated settlement, which avoids the uncertainties, costs, and delays associated with further litigation and which compensates the Class Members sooner, rather than later, if at all. The Class Representative and the attorneys believe that this settlement is in the best interests of all Class Members.

## WHO IS IN THE SETTLEMENT

### 5. How do I know if I am part of the settlement?

Everyone who fits the following description is a Class Member provided they do not "opt out" of the settlement: *All individuals who worked as CACafe In-store Demonstrators in Costco warehouses from October 31, 2012 and December 13, 2018.*

### 6. Are there exceptions to being included?

You are not a Class Member if you did not perform CACafe product demonstrations at Costco warehouses as a CACafe In-store Demonstrator. As noted below, even if you signed a severance agreement, or if you are subsequently offered a severance agreement, you may still participate in this settlement.

### 7. I am still not sure if I am included.

If you are receiving this notice, it is most likely that you do qualify to participate, and unless you opt out, you will receive a settlement payment, assuming that the Court approves the settlement. If you have questions about whether you qualify, you may contact Class Counsel at the contact information provided below.

### 8. What if I have signed a severance agreement, or sign one in the future?

If you are a former CACafe In-store Demonstrator who signed a severance agreement containing various releases of claims, you are not required to opt out of this settlement and you may still participate in this settlement. Remaining a part of the class will not jeopardize any severance payments you received after stopping work as a CACafe In-store Demonstrator.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

### 9. What does the settlement provide?

The settlement creates a fund of $640,000 to be divided among all California and non-California CACafe In-store Demonstrators who participate in the settlement, and <u>also</u> to be used to pay for Plaintiff's attorney's fees and costs, service payments to the Class Representative, service payments to Class Member deponents and Opt-in Plaintiffs, administrative expenses, and other payments made pursuant to this Settlement.

CACafe In-store Demonstrators who participate in the settlement will receive a *pro rata* payment based on the number of demonstrations performed at Costco warehouses during the Class Period.

### 10. How much will my payment be?

Your estimated share of the fund is listed on the first (1st) page of this Notice. The amount will depend on the number of CACafe product demonstrations you performed at Costco warehouses during the Class Period. If other Class Members do not participate in the settlement, your share of the fund may increase proportionately.

One-half of the settlement amount you receive will be considered interest and the other half will be considered penalties. Your recovery will be accompanied by an IRS Form 1099. You alone are responsible to pay any appropriate taxes on your recovery.

## YOU WILL RECEIVE A PAYMENT UNLESS YOU AFFIRMATIVELY OPT OUT

### 11. How can I get a payment?

If you are receiving this notice, you qualify for a settlement payment, and unless you affirmatively opt out of the settlement by **February 21, 2019**, you will automatically receive a payment, provided the Court grants final approval to the settlement.

### 12. When would I get my payment?

The Court will hold a hearing on April 23, 2019 at 2:00 p.m. to decide whether to finally approve the settlement. If the Court approves the settlement, there may be appeals. Resolving any appeals can take time, perhaps more than a year. Please be patient.

However, if the Court approves the settlement at the hearing and there are no appeals, payments will be made within several months after the hearing.

### 13. What am I giving up to get a payment?

Unless you affirmatively exclude yourself from the settlement, you are part of the Class. You cannot sue, continue to sue, or be part of any other lawsuit against Defendants concerning the wage and hour claims covered by this settlement. It also means that all of the Court's orders will apply to you and legally bind you.

Unless you affirmatively exclude yourself from the settlement, you will be releasing all wage and hour claims under California law covered by this settlement, whether you cash your check or not. If you have previously submitted a "consent to join" form, unless you withdraw your consent, you will also release all wage and hour claims under the federal Fair Labor Standards Act covered by this settlement, whether you cash your check or not. If you have not previously submitted a "consent to join" form, you will only release federal Fair Labor Standards Act claims if you cash your check.

QUESTIONS? CALL: 1-866-680-3219

You can review the exact language of the release by reviewing the Settlement Agreement online, at the web address listed in the "Getting More Information" section of this Notice, below. The relevant portion begins in Pages 7-8 of the Settlement Agreement.

**14. What if I believe I am not being credited for the right number of demonstrations?**

Any Class Member who disputes the information shown on his or her Notice of Settlement regarding the total number of CACafe product demonstrations that he or she performed at Costco warehouses as a CACafe In-store Demonstrator may indicate and explain such disagreement under penalty of perjury within forty-five (45) days of the mailing of the Notice of Settlement by notifying the Claims Administrator pursuant to the following procedures: a) Any such Class Member must submit documentation timely relating to his or her dispute; b) The Claims Administrator shall notify Defendants' respective Counsel and Class Counsel of any such dispute after receiving notice of the dispute; c) In the case of a dispute, CACafe Inc.'s records shall control and will have a rebuttable presumption of correctness, which means that it is your burden to prove, with records in support, that the number of relevant demonstrations listed in your Notice are wrong; d) The Claims Administrator will notify you whether or not your dispute has been successful.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this settlement, but you want to keep the right to pursue claims (or continue to pursue claims) against Defendants on your own regarding the legal issues in this case, then you must exclude yourself from the settlement. This is called "opting out" of the settlement Class. If you exclude yourself from the Settlement, you will not receive any money at all from this Settlement.

**15. How do I opt out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail or email stating that you want to be excluded from *Leona Marino v. CACafe, Inc. et al.* to the settlement administrator. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request postmarked no later than **February 21, 2019** to:

Marino v CACafe Claims Administrator
c/o Rust Consulting Inc - 6182
P.O. Box 54
Minneapolis, MN 55440-0054
Email: Info@CACafeSettlement.com
Phone: (866) 680-3219

If you ask to be excluded, you will not get any settlement payments of any kind in this case and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You will be able to pursue claims (or continue to pursue claims) against Defendants for the wage claims at issue in this case in the future, but all deadlines for your claims would become your responsibility. If you have a pending claim or lawsuit, speak to your lawyer in that case immediately. You may need to exclude yourself from this Class to continue your own claim or lawsuit.

**16. What happens if I do nothing?**

If you do nothing regarding this notice, you will be sent a check for your allocated amount, provided the Court grants final approval of the settlement. If you do not cash the check, your rights will still be affected, in that you will give up your right to sue Defendants for claims that this settlement resolves, other than federal claims under the FLSA.

Note, if you previously opted into the collective action by submitting a consent-to-join form, then your federal claims under the FLSA will be released regardless of whether you cash your check.

**17. What are claims under the Fair Labor Standards Act?**

The FLSA is a federal law governing the payment of overtime for hours worked past 40 in a week. In contrast, California law requires overtime to be paid for hours worked past 8 in a day or 40 hours in a week. California also has laws relating to meal breaks and rest breaks.

If you do nothing in this lawsuit, you will give up your right to sue based on any California wage law. If you cash your check, you will release your state and federal wage claims. If you previously filed a consent to join the FLSA collective action in this lawsuit and do not timely withdraw your consent as described in section 15 above, you will release your claims under the FLSA, regardless of whether you cash your check. If you have not previously filed a consent to join the FLSA collective action and you do not cash your check, you will retain your right to sue under the FLSA (but not under California law unless you opt out).

## THE LAWYERS REPRESENTING THE CLASS

### 18. Do I have a lawyer in this case?

Bryan Schwartz Law represents the Class with respect to class claims. These lawyers are called Class Counsel. These lawyers will be paid from the settlement amount, so you will not be charged personally for these lawyers' work on this case and in negotiating this settlement. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 19. How will the lawyers, Class Representative Plaintiffs, and the State of California be paid?

Class Counsel will ask the Court to approve the payment of $320,000 in attorneys' fees, as well as actual litigation costs, associated with investigating the facts, litigating the case, and negotiating the settlement. The Claims Administrator administering the settlement will be compensated at the fair market rate of those services from the settlement, currently estimated at $9,000. A service payment of up to $15,000 will be made to Class Representative Leona Marino, for her work in bringing this lawsuit as the only Class Representative, sitting for two days of depositions, attending mediation in person, completing written discovery, and in exchange for waiving a much broader array of claims than you are waiving.

Service payments of up to $2,500 will be made to each class member who was deposed by Defendants' counsel, and service payments of $1,000 will be made to each Opt-in Plaintiff and class members who provided declarations.

Class Counsel will also ask the Court to approve a payment of $4,800 to the State of California's Labor and Workforce Development Agency ("LWDA") to satisfy alleged Labor Code violations pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA"). This payment to the LWDA is required by statute.

The Court may award less than these amounts. Defendants have agreed not to oppose Class Counsel's request for fees, expenses, and service payments as described in this section. If the Court awards less than the amounts described in this section, that money will be redistributed to Class Members or distributed to an appropriate charity, depending upon the amount of the money. None of this money will return to Defendants.

## OBJECTING TO THE SETTLEMENT

### 20. How do I tell the Court that I challenge all or some of the settlement terms?

You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you will need to file an objection.

You may object to the proposed settlement in writing. You may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*Leona Marino v. CACafe, Inc. et al.*, Case No. 4:16-cv-06291-YGR); (b) be submitted to the Court either by mailing them to the Office of the Clerk of Court, United States District Court for the Northern District of California, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102-3489, or by filing them in person at any location of the United States District Court for the Northern District of California; and (c) be filed or postmarked on or before **February 21, 2019**.

### 21. What's the difference between objecting, on the one hand, and excluding myself (*i.e.*, "opting out") from the settlement, on the other?

Objecting is simply telling the Court that you wish to challenge all or part of the settlement. You can object only if you stay in the Class. Excluding yourself from the settlement or "opting out" is telling the Court that you do not want to be part of the Class or receive any payment at all from the settlement. If you exclude yourself (*i.e.*, opt out from the case), you have no basis to object because the case no longer affects you.

## THE COURT'S FINAL FAIRNESS HEARING

### 22. When and where will the Court decide whether to approve the settlement?

The Court will hold a Final Approval Fairness Hearing, which is currently scheduled for April 23, 2019 at 2:00 p.m., at the United States District Court for the Northern District of California, at 1301 Clay Street, 4th Floor, Courtroom 1, Oakland, CA 94612, before the Honorable Yvonne Gonzalez Rogers. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to approve the settlement. Please note that the hearing may be postponed without further notice to the Class. Thus, if you plan to attend the hearing, you should check the website identified in Question 25, below, or access the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

## 23. Do I have to come to the hearing?

No. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as the Court received your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

## 24. May I speak at the hearing?

You may ask the Court for permission to speak at the Final Fairness Hearing. To do so, you must send a letter to the Clerk of the Court saying that it is your "Notice of Intention to Appear in *Leona Marino v. CACafe, Inc. et al.*, Case No. 4:16-cv-06291-YGR." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than **February 21, 2019**, and be sent to the Clerk of the Court, Class Counsel, and Counsel for Defendants at the addresses listed below. You cannot speak at the hearing if you excluded yourself ("opted out") from the settlement.

| Court | Class Counsel |
|---|---|
| Office of the Clerk of Court<br>United States District Court<br>for the Northern District of California<br>450 Golden Gate Avenue, Box 36060<br>San Francisco, CA 94102-3489 | Bryan Schwartz<br>Eduard Meleshinsky<br>Bryan Schwartz Law<br>180 Grand Ave., Suite 1380<br>Oakland, CA 94612 |
| **Counsel for CACafe Defendants** | **Counsel for Defendant CDS** |
| Alexei Brenot<br>Law Offices of Sam X.J. Wu<br>8600 Utica Avenue, Building 100<br>Rancho Cucamonga, CA 91730 | Fermin H. Llaguno<br>Oliver Dreger<br>Littler Mendelson<br>2050 Main St Ste 900<br>Irvine, CA 92614-7284 |
| **Counsel for Defendant Costco** | |
| Catherine M. Dacre<br>Justin T. Curley<br>Seyfarth Shaw LLP<br>560 Mission Street, Suite 3100<br>San Francisco, CA 94105 | |

## GETTING MORE INFORMATION

## 25. Are there more details about the settlement?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at http://www.bryanschwartzlaw.com/isds, by contacting Class Counsel as set forth in Section 26, below, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the Office of the Clerk of Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. If there is any conflict between this Notice and the Settlement Agreement, the Settlement Agreement will control.

## 26. How do I get more information?

You can call 1-866-680-3219 toll free, write to Marino v CACafe Claims Administrator, c/o Rust Consulting Inc – 6182, P.O. Box 54, Minneapolis, MN 55440-0054, or go to http://www.bryanschwartzlaw.com/isds.

You may also call Class Counsel:

Eduard Meleshinsky, at Bryan Schwartz Law, (510) 444-9300

**DO NOT CALL THE COURT**

**CONCLUSION**

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, THE HONORABLE YVONNE GONZALEZ ROGERS, UNITED STATES DISTRICT COURT JUDGE.**

_____

The Honorable Yvonne Gonzalez Rogers
United States District Judge

QUESTIONS? CALL: 1-866-680-3219

# EXHIBIT C

**Combined List of Opt-Ins & Declarants (*see* Page 2 and 3 for individual lists) Excluding Named Plaintiff Leona Marino, Class Member Deponents Ralph Tracy and William Harris**

1.  Anguiano, Guadalupe
2.  Berkowitz, Robert
3.  Blakely, Jaimsyne
4.  Campa, Travis
5.  Chafino, Jonathan
6.  Gedjekoushian, Hovig
7.  Hadadian, Brigitte
8.  Holguin, Maria
9.  Kunkel, George
10. Kwon, Tommy
11. LaCanfora, Cynthia
12. Leung, Kee Chung
13. Lezama, Gustavo
14. Mejia, Guadelupe
15. Minassian, Harout
16. Nisewander, Mellisa
17. Onuora, Chinedum
18. Perez Kunkel, Reyna
19. Rogers, Suzanne
20. Romero, Diego
21. Romero, Marcelo
22. Sfera, Pavel
23. Tellez, Eva
24. Thompson, Michael
25. Willey, Michael
26. Zabransky, Sylvia

**<u>List of Opt-Ins</u>**

1. Blakely, Jaimsyne
2. Campa, Travis
3. Chafino, Jonathan
4. Gedjekoushian, Hovig
5. Hadadian, Brigitte
6. Holguin, Maria
7. Kunkel, George
8. Kwon, Tommy
9. LaCanfora, Cynthia
10. Leung, Kee Chung
11. Lezama, Gustavo
12. Mejia, Guadelupe
13. Minassian, Harout
14. Nisewander, Mellisa
15. Perez Kunkel, Reyna
16. Rogers, Suzanne
17. Romero, Diego
18. Romero, Marcelo
19. Sfera, Pavel
20. Tellez, Eva
21. Thompson, Michael
22. Zabransky, Sylvia

**<u>List of Declarants</u>**

1. Anguiano, Guadalupe
2. Berkowitz, Robert
3. Blakely, Jaimsyne
4. Campa, Travis
5. Chafino, Jonathan
6. Holguin, Maria
7. Kunkel, George
8. LaCanfora, Cynthia
9. Minassian, Harout
10. Nisewander, Mellisa
11. Onuora, Chinedum
12. Perez Kunkel, Reyna
13. Romero, Diego
14. Tellez, Eva
15. Thompson, Michael
16. Willey, Michael